# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | :    CRIMINAL NO. 14-496 |
| PARIS CHURCH, | : |
|     a/k/a "Pay," | |
|     a/k/a "Derek Davis," | : |
|     a/k/a "Dereck Davis," | |
| DONALD WOMACK, SR., | : |
|     a/k/a "Rock," | |
| NATHANIEL DE-MEIR COLES, | : |
|     a/k/a "Daz," | |
|     a/k/a "D" | : |

## GOVERNMENT'S TRIAL MEMORANDUM

The government submits its Trial Memorandum and Motions *In Limine* in advance of the trial of defendants Paris Church, Nathaniel De-Meir Coles, and Donald Womack, Sr. Trial is scheduled to begin on August 1, 2016. The United States submits this trial memorandum in order to advise the Court of the issues that may be presented at trial. The United States requests that it be afforded the opportunity to provide additional written submissions to the Court in response to any defense submissions or in the event that other issues arise during the course of the trial.

## I. SUMMARY OF EVIDENCE

These charges arise out of the efforts of defendants Church, Coles, and Womack, along with co-defendant Michael Pinkney, to obtain more than 5 kilograms of cocaine from a source of supply in Mexico known as "Daniel." Most of the evidence supporting these charges is derived from a court authorized intercept of Church's telephone. During the course of the government's investigation, the Federal Bureau of Investigation (FBI) and Drug Enforcement Administration

(DEA) obtained Title III authorizations to intercept one cellular phone of Church, as follows:

- On December 13, 2013, the Honorable Berle M. Schiller of the United States District Court for the Eastern District of Pennsylvania (as Emergency Judge) authorized the interception of wire and electronic communications over TARGET TELEPHONE #3 (Misc. No. 13-2008-2), a cellular telephone used by PARIS CHURCH. Interception pursuant to this authorization began on December 13, 2013, and was renewed on January 10, 2014, February 7, 2014, and March 7, 2014. Live monitoring of the Target Telephone #3 ended at approximately 11:59 p.m. on Saturday, April 5, 2014, at which time all interceptions ceased. On that same date, an Order was issued by Judge Baylson, sealing a Disc containing recordings of intercepted wire and electronic communications.

Church, Coles, Womack, Daniel, and Pinkney, among others, were intercepted pursuant to these Court authorizations.[1]

During these phone calls and text message conversations, Church, Coles, Womack, and Pinkney discussed, *inter alia*, the possibility of obtaining more than 5 kilograms of cocaine from a source in Mexico known to them only as "Daniel." Generally, the evidence will show that the plan to obtain the cocaine from Daniel involved Church and Pinkney going to Texas to obtain the cocaine. Womack, Church and Coles were all in contact with Daniel, and Pinkney planned to rent an RV so that he and Church could drive to Texas to obtain the cocaine.

The evidence will also show that on January 29, 2014, Daniel requested that Church wire $300 in the name of Mario Castaneda, to Kingsville, Texas, for the driver of the car that would be transporting the cocaine across the Mexican border. Daniel also told Church during that conversation that if Church wired the money, the car might be able to drive over the Mexican border and into Houston by the next day. Church wired the money via a Western Union located inside a Giant grocery store in Brookhaven, Pennsylvania that same day. The government will

---

[1] A number of the intercepted conversations were in "code." The government will call a drug expert to discuss the fact that drug dealers often talk in "code" when on the telephone. Further, the government will call a member(s) of the conspiracy and/or associates of the defendants to discuss specifically the "code" used on the phones during some of the drug conversations.

introduce a video, photographs, and records of Church wiring the money at the Western Union.

Two days later, Daniel told Church that the car containing the cocaine would be ready to cross the border that day. Thereafter, despite attempts by the defendants to contact Daniel, they never heard from Daniel that the car had crossed the border.

### *Conspiracy to possess with intent to distribute cocaine*

The defendants are charged with one count of conspiracy to possess with intent to distribute 5 kilograms or more of cocaine in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A). The evidence to be presented by the government in its case-in-chief will show, *inter alia*, that the defendants conspired to obtain more than 5 kilograms of cocaine from a source of supply in Mexico. The government will introduce evidence at trial, including video and documentary evidence; court-authorized electronic and wire interceptions of a cell phone used by Paris Church (the government anticipates presenting numerous intercepted calls and text messages); cooperating witness testimony; and phone and GPS data. A general description of the expected focal points of the evidence at trial is supplied below.

## II. LEGAL STANDARDS

The government describes the general legal principles which should govern at trial, and details the law concerning various evidentiary issues that may arise. Section A, below, deals with Count One, and provides a comprehensive discussion not only of the law of conspiracy but also of the legal standards governing admission of evidence to prove a conspiracy. This section also describes the bases for admission of evidence. Section B will address certain trial issues. Section C will address additional issues.

### A. Conspiracy

#### 1. Conspiracy Generally.

Where, as here, the indictment charges the existence of a conspiracy containing multiple members, the United States must provide evidence at trial that will allow a reasonable fact finder to conclude beyond a reasonable doubt that the defendant and at least one other person shared a "unity of purpose" or the intent to "achieve a common goal" and an agreement to "work together toward the goal." United States v. Applewaite, 195 F.3d 679, 684 (3d Cir. 1999) (citations omitted). The United States is not required to prove the existence of an express or formal agreement; "a tacit understanding is sufficient." Ianelli v. United States, 420 U.S. 770, 777 n.10 (1975). Further, proof of the existence of an agreement may be established entirely by circumstantial evidence. Conspiracy law merely requires that the inferences drawn have a logical and convincing connection to the evidence. Applewaite, 195 F.3d at 684. Moreover, "juries are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence." United States v. Ramirez, 954 F.2d 1035, 1039 (5th Cir. 1992). It bears observing that the government, to sustain a conspiracy conviction, need only show sufficient evidence that the defendant conspired with "someone -- anyone." United States v. Pressler, 256 F.3d 144, 149 (3d Cir. 2001) (quoting United States v. Obialo, 23 F.3d 69, 73 (3d Cir. 1994)).

#### 2. Events Not Specifically Alleged in Count One

Title 21, United States Code, Section 846 does not require that the government allege or prove an overt act in order to prove a violation of the statute. There are a wide variety of facts adverted to in the indictment, count one; there are also a wide variety of facts that were not

4

alleged in the indictment, but which prove the conspiracy. This additional evidence relates directly to the conspiracy, and is admissible despite the fact that it is not specifically discussed in the indictment. See United States v. Gibbs, 190 F.3d 188, 217 (3d Cir. 1999) (holding that defendant's participation in uncharged acts of violence was admissible as direct proof of the conspiracy with which he was charged); United States v. Thai, 29 F.3d 785, 812-13 (2d Cir. 1994) ("[i]t is clear the Government may offer proof of acts not included within the indictment, as long as they are within the scope of the conspiracy . . . An act that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an 'other' act within the meaning of Rule 404(b); rather it is part of the very act charged.") (internal quotations and citations omitted). In United States v. Cross, 308 F.3d 308 (3d Cir. 2002), the Third Circuit explained that "acts are intrinsic when they directly prove the charged [crime]."

### 3. Concealment of Evidence

There were several efforts by various defendants to hide evidence by speaking in code over the telephone and in text messages during the course of this conspiracy. These episodes are admissible as actions in furtherance of the conspiracy, and as evidence of consciousness of guilt. See Ashcraft v. Tennessee, 327 U.S. 274, 277 (1946) ([w]ilful concealment of material facts has always been considered as evidence of guilt.); United States v. Burrous, 147 F.3d 111, 117 (2d Cir. 1998) (throwing box of cash from window of car during arrest permitted inference of consciousness of guilt); United States v. Hackett, 638 F.2d 1179, 1186 (9th Cir. 1980) (flight, disposal of evidence permit inference of consciousness of guilt); Rivers v. United States, 270 F.2d 435, 438 (9th Cir. 1959) (dismemberment, disposal of body is evidence of consciousness of guilt in murder case).

### 4. Association With Other Conspirators

While presence and association alone cannot establish a defendant's participation in a conspiracy, the jury is permitted to "consider presence and association, along with other evidence, in finding conspiratorial activity by the defendant." United States v. Chavez, 947 F.2d 742, 745 (5th Cir.1991). United States v. Pompa, 434 F.3d 800, 806-07 (5th Cir. 2005); accord United States v. Mickelson, 378 F.3d 810, 821(8th Cir. 2004) (association, while not enough on its own to prove conspiracy, is admissible with other evidence to prove conspiracy). Photographs of various defendants together is admissible to prove a conspiracy. United States v. Price, 418 F.3d 771, 782 (7th Cir. 2005). The government will introduce testimony from a witnesses and evidence from phone data that connect the conspirators together.

### 5. Expert Narcotics Testimony

"In cases involving narcotics trafficking, courts have admitted a broad range of expert testimony concerning the 'modus operandi' of the drug trade." United States v. McGlory, 968 F.2d 309, 345 (3d Cir. 1992); see also United States v. Watson, 260 F.3d 301, 308 (3d Cir. 2001) ("[E]xpert testimony concerning the modus operandi of individuals involved in drug trafficking does not violate Rule 704(b)."). It is well established that police officers may testify as experts concerning the methods and practices employed in a particular area of criminal activity, United States v. Pungitore, 910 F.2d 1084, 1149 (3d Cir. 1990), including the operations of a drug trafficking ring, United States v. Ginsberg, 758 F.2d 823, 830 (2d Cir. 1985); United States v. Montas, 41 F.3d 775, 783-84 (1st Cir. 1994). Courts have upheld the admissibility of expert testimony by investigative agents who are properly qualified as experts regarding the "tools of the trade" for narcotics trafficking. United States v. Foster, 939 F.2d 445, 453 (7th Cir. 1991); United States v. Solis, 923 F.2d 548, 550-51 (7th Cir. 1991) (expert testimony upheld on the use

of beepers in narcotics trafficking); United States v. Monu, 782 F.2d 1209, 1210-11 (4th Cir. 1986) (expert testimony upheld on the use of scales in the drug trade); United States v. Navarro, 90 F.3d 1245, 1259-60 (7th Cir. 1996). In addition, "experienced narcotics agent[s] may testify about the significance of certain conduct or methods of operation to the drug distribution business, as such testimony is often helpful in assisting the trier of fact understand the evidence." United States v. Griffith, 118 F.3d 318, 321 (5th Cir. 1997), quoting United States v. Washington, 44 F.3d 1271, 1283 (5th Cir. 1995).

The government intends to introduce the testimony of Special Agent Randy Updegraff of the Drug Enforcement Administration, who is an expert in the operations of large drug trafficking organizations. The expert's testimony, in this case, is admissible under Daubert, as he will provide a reliable opinion based on years of experience. The district court should find that the expert possesses "areas of specialized knowledge outside the common experience of the jury," and that he is qualified to testify as an expert "in drug enterprises and their organization; as well as the trafficking in narcotics, including cocaine and crack."

This testimony, concerning a variety of aspects of drug trafficking organizations, is, in fact, specialized knowledge which is not within the purview of the average juror. Agent Updegraff will provide detailed information regarding the coded language used throughout phone calls and text message conversations intercepted during the court-authorized Title III wiretap investigation. Agent Updegraff will testify that drug dealers use coded language to conceal the true nature and context of their conversations concerning their illegal activity, in order to avoid detection by law enforcement. In addition, drug dealers often use multiple phones, multiple SIM cards, change numbers frequently and often have cell phones subscribed in an alias in order to avoid detection by

law enforcement. His expertise, gained through hundreds of investigations concerning how narcotics traffickers protect their turf, avoid losing the large amounts of currency they obtain, and attempt to avoid detection by police, is not knowledge available to the average citizen or juror.

Agent Updegraff will testify that drug dealers not only talk in coded language in phone calls and text messages but also use "street language" when talking to each other in person. Agent Updegraff will testify that drug dealers use multiple cars, including purchasing cars in third parties' names, as well as borrowing and renting cars in an effort to thwart law enforcement. Drug dealers also often use third parties to rent the vehicles for them. Further, Agent Updegraff will testify that drug dealers and customers often use nicknames, aliases or street names in order to prevent law enforcement from knowing their true identities. Drug dealers also do this in order to prevent other drug dealers from knowing who they are or figuring out where they live in order to avoid being robbed by other drug dealers.

Agent Updegraff will also offer expert testimony regarding the following: (1) the importation of cocaine into the United States through Mexico; (2) the subject matter of drug investigations and conspiracy to possess with intent to distribute drugs including cocaine; and (3) whether the factual circumstances of this case is consistent with conspiracy to possess with intent to distribute controlled substances.

Agent Updegraff will also testify regarding specific prices for quantities of cocaine in Chester, Pennsylvania from September 2012 through September 2014. These prices will include but not be limited to the prices for a kilogram of cocaine and smaller quantities such as "points" (125 grams) and ounces (28 grams). This testimony will be

based on prior and contemporaneous investigations, and Agent Updegraff's knowledge of the price of cocaine on the streets in Chester, Pennsylvania.

Agent Updegraff will also explain relationships between drug dealers and their suppliers, specifically how drug dealers often have multiple suppliers but may favor one supplier over another due to the pricing or quality of drugs from that supplier.

Agent Updegraff will testify regarding the "tools of the trade." These tools include, but are not limited to, money transfers and cellphones. Agent Updegraff also will detail drug dealers and drug customers' knowledge and awareness of police surveillance.

### B.     Essential Elements

To prove a violation of Title 21, United States Code, Section 846 (Count One, charging all defendants with a drug trafficking conspiracy), the government must prove the following:

        a.      That the defendant agreed with one or more persons;

        b.      To possess with intent to distribute a controlled substance,[2] in this case, cocaine, a Schedule II controlled substance; and

        c.      That the defendant did so knowingly and intentionally.

### C.     Potential Trial Issues

    1.    Expert Testimony

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or

---

[2] Where enhanced penalties are based on the weight of narcotics, the statutory weight will be alleged and proven at trial to prevent any problems arising from the decision in Apprendi v. New Jersey. The jury should determine the weight of the drugs attributable to each conspirator by special interrogatory.

education, may testify thereto in the form of opinion or otherwise. Fed. R. Evid. 702.

The government expects to introduce expert testimony of Special Agent Randy Updegraff as detailed above.

### 2. Phone Records and Summary Chart

The government has made available telephone records for cellular telephones associated with the defendants or their co-conspirators/associates. The government expects to call FBI Special Agent Robert Lockhart as a summary witness to present these records in a summary chart form. A draft copy of the summary charts will be provided to defense counsel prior to his testimony. The summary charts will save significant time in presenting the evidence.

### 3. Cooperators - Plea Agreements

There are certain witnesses who may testify during this trial who have pled guilty and have plea agreements with the government. These defendants have had change of plea hearings before the Court. The government will turn over each potential witness's plea agreement. Evidence of a witness's plea agreement is permissible to allow the jury to assess the witness's credibility, to eliminate any concern that the defendant has been singled out for prosecution, and to explain how the witness possessed detailed first-hand knowledge regarding the events about which he testifies. See United States v. Universal Rehab. Servs., Inc., 205 F.3d 657, 667 (3d Cir. 2000) (en banc).

In direct examination, the government intends to discuss the written plea agreement and discuss the witness's responsibilities under the terms of the agreements, including the witness's obligation to tell the truth. Such testimony may properly be introduced by the government. See United States v. Ramos, 27 F.3d 65, 67 n.4 (3d Cir. 1994).

The witness's intent to plead guilty and plea agreement may not be considered as evidence of the defendant's guilt. See Universal Rehab. Servs., 205 F.3d at 668; United States v. Gaev, 24 F.3d 473, 476 (3d Cir. 1994); United States v. Gambino, 926 F.2d 1355, 1363 (3d Cir. 1991). The Third Circuit has held that, in such cases, the jury should be instructed that it may not consider the guilty plea and/or plea agreement as evidence that the defendant is guilty of the offenses with which he is charged. See Universal Rehab. Servs., 205 F.3d at 668; Gaev, 24 F.3d at 478. Accordingly, the government respectfully requests that the Court give a cautionary instruction to the jury with respect to the testimony of the witness. See Third Circuit Model Criminal Jury Instructions, § 2.22 ("Witness Who Has Pleaded Guilty to the Same or Related Charges").

    4.  Custodian of Records/Potential Stipulations

The government will request that counsel stipulate to the following custodian of records testimony:

    (a)  All toll and subscriber phone records (business record certifications will be provided)

    (b)  All business records (business record certifications will be provided)

    5.  Exhibits - Presented in Electronic Format

The government will provide the Court with an exhibit book and defense counsel with exhibit discs prior to the start of trial. In addition, in order to move quickly and save significant time in presenting the evidence, the government will have the exhibits loaded into a computer using the "Sanctions" program, to allow for their display electronically to the jury.

### 6. Order of Proof

The government respectfully requests the ability to call Special Agent Randy Updegraff on multiple occasions. This practice will allow the evidence to be presented in a chronological, coherent, and more efficient manner.

### 7. Audio/Video Recordings and Transcripts

Pursuant to the government's previously filed Starks/Rule 901 motion, the government has provided the audio/video recordings and the transcripts (with some minor corrections being made during the course of trial preparation and then provided to defense counsel) of the recorded conversations with defendants and co-conspirators. The government will play certain video and audio recordings during trial and in order to save time in presenting this evidence the government has synchronized the recordings and transcripts electronically.

## C. Other issues

Obviously, potential rebuttal witnesses exist, whose presentation would depend on whether defendants elect to present any defense, and if they do, what they or other witnesses say in the course of that defense.

Jury instructions, verdict sheets, *voir dire*, notice under Rule 404(b), and motions *in limine* have been/are being filed under separate cover.

The United States requests that all witnesses be sequestered with the exception of DEA Special Agents Randy Updegraff and Patrick Barry, and FBI Special Agent Robert Lockart, the case agents who participated in the investigation and will be assisting the government during the trial.

Respectfully submitted,

ZANE DAVID MEMGER
*United States Attorney*


_____/S/_____
ASHLEY K. LUNKENHEIMER
A. NICOLE PHILLIPS
*Assistant United States Attorneys*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Trial Memorandum has been served by me, this date, by email or electronic filing upon the following individuals:

Trevan Borum, Esq.
Two Penn Center, Suite 900, 1500 JFK Blvd.
Philadelphia, PA 19102
t.borum@verizon.net
*Attorney for Donald Womack*

George Henry Newman, Esq.
Newman & Associates
100 S. Broad Street, Suite 2126
Philadelphia, PA 19110
ghnlawyer@yahoo.com
*Attorney for Paris Church*

Arnold C. Joseph, Esq.
Joseph & Associates
1617 John F Kennedy Blvd., Suite 1700
Philadelphia, PA 19103
joseph@josephandassoc.com
*Attorney for Nathaniel Da-Meir Coles*

/S/
ASHLEY K. LUNKENHEIMER
Assistant United States Attorney

DATED: July 15, 2016