
# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,      :Case No. 2:14-cr-00496-GAM-3 -File
         Plaintiff,      :      2:14-cr-00516-GAM-2
v                    :          172
                    :

NATHANIEL DA-MEIR COLES,      :
         Defendant.     :Philadelphia, Pennsylvania
                    :June 21, 2019
                    :10:20 a.m.
                    :

. . . . . . . . . . . . . .

## TRANSCRIPT OF SUPPRESION HEARING
### BEFORE THE HONORABLE GERALD A. MCHUGH
### UNITED STATES DISTRICT COURT JUDGE

FILED

AUG - 7 2019

KATE ... MAN, Clerk
By ____ TG ____ Dep. Clerk

APPEARANCES:

FOR THE PLAINTIFF:

UNITED STATES OF AMERICA:    ROBERT ECKERT, ESQ.
                               UNITED STATES ATTORNEY
                               615 CHESTNUT STREET, SUITE 1250
                               PHILADELPHIA, PA 19106
                               215-861-8469
                               Email: Kelly.Harrell@usdoj.gov

FOR THE DEFENDANT
NATHANIEL DA-MEIR COLES:    DINA CHAVAR
                               1007 NORTH ORANGE ST 4TH FL
                               WILMINGTON, DE 19801
                               302-256-0804
                               Email: dina@dinachavar.com

Court Recorder:  Not Provided

Transcription Service:  Associated Reporters Int'l., Inc.

10 River Drive
Massena, New York 13662

1  Proceedings recorded by electronic sound recording;
2  transcript produced by transcription service.

1          THE COURT:  All right.  We can go on the record.

2  This is United States of America versus Nathaniel Coles, criminal

3  matters fourteen dash four nine six dash three and fourteen dash

4  five one six dash two.

5          Would counsel please identify themselves for the

6  record?

7          MR. ROBERT ECKERT:  Certainly.  Good morning, Your

8  Honor.  Bob Eckert on behalf of the government.

9          THE COURT:  Mr. Eckert.

10          MS. DINA CHAVAR:  Good morning, Your Honor.  Dina

11  Chavar on behalf of Nathaniel Coles.

12          THE COURT:  Good morning Ms. Chavar and good

13  morning to you Mr. Coles.

14          MR. NATHANIEL COLES:  Good morning, Your Honor.

15          THE COURT:  The court will also recognize the

16  presence of Officer Boyer from Probation.

17          Thank you for your assistance, sir.

18          OFFICER CHRISTOPHER BOYER:  Good morning, Your

19  Honor.  Thank you.

20          THE COURT:  Good morning.  Mr. Coles, I'm sure,

21  sir, that you are -- you know why we're here in court today?

22          MR. NATHANIEL COLES:  Yes, Your Honor.

23          THE COURT:  All right.  And I can tell from the

24  record that counsel have received copies of the Pre-sentence

25  Investigation Report.  Is that correct?

1          MR. ECKERT:  I have, Your Honor.

2          MS. CHAVAR:  Yes, Your Honor, I have.

3          THE COURT:  All right.  And Mr. Coles, there's a

4    document prepared by Probation we call the Pre-sentence

5    Investigation Report, and have you had the opportunity to

6    review that with Ms. Chavar?

7          MR. NATHANIEL COLES:  Yes, Your Honor.

8          THE COURT:  All right.  And I know there's some

9    objections, Ms. Chavar, which we will get to in a moment,

10   but before I do that, let me just ask, have you had enough

11   time, Mr. Coles, to meet with Ms. Chavar and prepare for the

12   sentencing today?

13         MR. NATHANIEL COLES:  Yes, Your Honor.

14         THE COURT:  All right.  And are you satisfied with

15   the representation that you have received?

16         MR. NATHANIEL COLES:  Yes, Your Honor.

17         THE COURT:  And are you feeling physically and

18   mentally well enough to proceed with the sentencing today?

19         MR. NATHANIEL COLES:  Yes, Your Honor.

20         THE COURT:  All right.  Counselor, I understand

21   that there may be an item you wish to address at side bar.

22   Would you like to do that now or at a later point?

23         MS. CHAVAR:  We can do it now, Your Honor.

24         MR. ECKERT:  Sure.

25         THE COURT:  Now?  All right.  You may approach.

1          [Sidebar Discussion Begins]

2          (Whispering and off mic, generally unintelligible)

3          MR. ECKERT:  Morning, Your Honor.

4          THE COURT:  Just -- yeah, make sure we get in the

5     mic.

6          MS. CHAVAR:  Okay.  So with respect to the

7     argument and acceptance of responsibility clause, I'm going

8     (unintelligible).  He attended (unintelligible) prior to the

9     case coming to trial.  I of course was not involved

10    (unintelligible).

11         THE COURT:  What do you mean he was

12    (unintelligible)?

13         MS. CHAVAR:  (unintelligible)

14         MR. ECKERT:  (unintelligible).  This was before I

15    was involved.  (unintelligible) my -- my understanding.

16         THE COURT:  Yeah.  Okay.  Yeah, it's not

17    (unintelligible).

18         MR. ECKERT:  (unintelligible).

19         THE COURT:  All right.  Thank you.

20         MR. ECKERT:  (unintelligible).

21         MS. CHAVAR:  (unintelligible) about why

22    (unintelligible) I just want to let the court know and

23    (unintelligible) which he did (unintelligible)

24         THE COURT:  Well, let me ask you about that.  In

25    terms of the sensitivity of doing this at side bar, is there

1     anyone in the courtroom that you're concerning about other

2     than family?

3         MS. CHAVAR: Other than family, no.

4         THE COURT: So I mean I'd like to hear this I

5     think as part of the argument unless you think there's some

6     security risk involved.

7         MS. CHAVAR: What if I just (unintelligible)?

8         THE COURT: That's fine and I will --

9         MS. CHAVAR: (unintelligible)

10        THE COURT: -- incorporate -- I will incorporate

11     this detail into your argument, so --

12        MS. CHAVAR: Thank you.

13        THE COURT: -- (unintelligible) and now that I'm

14     here, do you want to address that particular argument, Mr.

15     Eckert?

16        MR. ECKERT: Sure. First off, that while there

17     were (unintelligible) my understanding is that

18     (unintelligible) jail and talked to him. This is not a

19     defendant who came around and said, you know,

20     (unintelligible) cooperation during certain pre-trial

21     discussions that were had and denied all cooperation

22     (unintelligible) as were his right and he has been given

23     multiple opportunities to accept responsibility

24     (unintelligible). I think at this stage, you can't say well

25     he went through a couple of (unintelligible) and now

1   (unintelligible).

2           THE COURT:  Okay.  I understand your position.

3   One other question with his history, when McGarrigle took

4   over (unintelligible) was it because of Mr. Coles'

5   requesting new counsel?

6           MS. CHAVAR:  I believe so.

7           MR. ECKERT:  I believe so.

8           MS. CHAVAR:  Yeah.

9           MR. ECKERT:  I believe so.

10          MS. CHAVAR:  Yes.

11          THE COURT:  Okay.  Because I think that -- I think

12  (unintelligible) --

13          MS. CHAVAR:  (unintelligible).

14          THE COURT:  -- I think -- I think that bears on

15  it.

16          MS. CHAVAR:  Do you?

17          THE COURT:  (unintelligible) least respect

18  (unintelligible) Mr. Joseph as counsel and make peace and

19  Mr. (unintelligible) with that advice (unintelligible).  I

20  think that that bears on whether or not he's entitled to a

21  reduction.  That's the only reason I asked the question.

22          MR. ECKERT:  Right.  I would just offer

23  (unintelligible) that it's clear that Mr. Joseph was

24  encouraging him -- it's my understanding is that Mr. Joseph

25  was encouraging him to (unintelligible) perhaps Mr.

1     McGarrigle (unintelligible) told him what he wanted to hear

2     --

3              THE COURT: Right.

4              MS. CHAVAR: That's --.

5              MR. ECKERT: -- but again, that bears upon

6     (unintelligible).

7              THE COURT: Again, and Arnold Joseph, from my

8     experience, is well received by the clients he represents.

9     He's an experienced lawyer and (unintelligible) have a

10     situation where a defendant is asking to have him replaced

11     with new counsel just suggests to me (unintelligible) he's

12     not happy with the advice being given by counsel.

13              MR. ECKERT: Right.

14              THE COURT: I want to put those things on the

15     record as part of my thought process in determining whether

16     or not I think that particular reduction would be

17     appropriate.

18              MS. CHAVAR: Okay.

19              MR. ECKERT: Sure.

20              MS. CHAVAR: I just want to clarify

21     (unintelligible) --.

22              MR. ECKERT: (unintelligible)? Forgive me.

23              MS. CHAVAR: (unintelligible) and I just want to

24     say (unintelligible) establish a communication

25     (unintelligible). It was touch and go sometimes.

1          THE COURT:  (unintelligible) it was late in the

2    process when he decided to plead to the separate charge, so

3    --.

4          MS. CHAVAR:  (unintelligible)  That was never --

5    that was never --

6          THE COURT:  (unintelligible).

7          MS. CHAVAR:  -- never (unintelligible).

8          THE COURT:  All right.  (unintelligible).

9          MS. CHAVAR:  Let -- may I have a moment, Your

10   Honor, just to --

11         THE COURT:  Of course, Ms. Chavar.

12         MS. CHAVAR:  -- let Mr. Coles know?

13         THE COURT:  By all means, brief Mr. Coles on our

14   discussion at sidebar.

15         [Sidebar Discussion Ends]

16         MS. CHAVAR:  Thank you, Your Honor.

17         THE COURT:  No problem, Ms. Chavar.  For purposes

18   of the record, in preparation for the hearing today, the

19   Court is obviously familiar with the case having presided

20   over several trials, including the one trial in which Mr.

21   Coles participated and so I'm familiar with the overall

22   investigation and case.  I've obviously reviewed the Pre-

23   sentence Investigation Report, the Sentencing Memoranda,

24   both the government and the defense.  Seven letters have

25   been submitted on Mr. Coles behalf and I have read those as

1   well.  I understand that his mother is in court today.  Is

2   that so?

3           Good morning, ma'am.

4           MS. NEVADA COLES:  Good morning.

5           THE COURT:  And I appreciate the fact that you've

6   handed in the transcript for your son showing his graduation

7   from high school.

8           MS. NEVADA COLES:  Yes, thank you.

9           THE COURT:  I -- I have reviewed that, ma'am, and

10  it is part of the record in the case.  All right.?

11          MS. NEVADA COLES:  Okay.  Thank you.

12          THE COURT:  I just wanted you to know that.  And

13  so the Court brings all of that familiarity to the case

14  here.  I'll note that there is -- there has been a

15  withdrawal of information charging prior offenses in both

16  docket fourteen four ninety-six and docket fourteen five one

17  six.  Is that correct, Mr. Eckert?

18          MR. ECKERT:  It is, Your Honor.

19          THE COURT:  All right.  So we've accomplished that

20  as well.

21          MR. ECKERT:  Thank you.

22          THE COURT:  And there is an outstanding motion for

23  forfeiture and Ms. Chavar, is there any objection to that?

24          MS. CHAVAR:  No objection, Your Honor.

25          THE COURT:  All right.  That being the case, the

1    Court will proceed to sign the order of forfeiture.  What

2    I'd like to do now, Counsel, is turn back to the Pre-

3    sentence Investigation Report and there were two formal

4    objections to the report, Ms. Chavar, and then there's

5    argument set forth in your Sentencing Memorandum which was

6    very well done.  We'll -- we'll -- what I'd like to do is

7    with respect to your first objection, it has to do with

8    Probation's refusal to apply the downward adjustment of

9    offense level under Three B one point two for a minimum or

10   minor involvement.  I'd like to defer that until argument.

11   All right?

12          MS. CHAVAR:  Uh-huh.

13          THE COURT:  So we'll pass over that for now.  The

14   second objection though has to do with whether for the

15   Career Offender Enhancement to apply as set forth in

16   paragraph one o seven of the report whether it was required

17   for the government to -- to file an Eight fifty-one

18   information and Probation took the position that it's not

19   necessary and that's my understanding of the law as well.

20          Government, what's your position on that?

21          MR. ECKERT:  No, I would -- I would concur with

22   that, Your Honor.  They're two distinct -- the Career

23   Offender Guidelines are not borne out by the Eight fifty-one

24   notice.

25          MS. CHAVAR:  Your Honor, if I articulated that in

1    a way it was misunderstood.  That's not what I meant to

2    advance.

3          What I meant to say is that at least one of the --

4    the predicates that trigger the Career Offender Provision

5    would probably not be the type of predicate that would

6    trigger an Eight fifty-one filing.  So we should consider

7    that and -- and I do understand that -- that it's two

8    different tests and I'll discuss that as a variance.  I'll

9    withdraw if you had thought that that was --.

10         THE COURT:  Why -- yeah, why don't we consider

11   that formal objection withdrawn and then --

12         MS. CHAVAR:  Yes.

13         THE COURT:  -- why don't weave into your argument

14   the nature of the one prior offense that you think perhaps

15   should not be counted --

16         MS. CHAVAR:  Yes.

17         THE COURT:  -- in deciding whether the Career

18   Offender Enhancement applies.  Is that satisfactory?

19         MS. CHAVAR:  Yes, Your Honor.  I'm prepared to do

20   that.

21         THE COURT:  All right.  Thank you.  I think that's

22   -- that's the appropriate way in which to proceed, so with

23   that having been established, Counsel, are there any other

24   unresolved objections or any formal motions before we get to

25   argument?

1          MR. ECKERT:  There are none from the Government,

2     Your Honor.

3          MS. CHAVAR:  And then there is the two-point

4     reduction for acceptance of responsibility.

5          THE COURT:  I'm going -- that -- I'm weaving that

6     into argument.  Right.

7          MS. CHAVAR:  Thank you.

8          THE COURT:  Okay.  All right.  So with that then I

9     would be prepared to hear from the Government in the case.

10          MR. ECKERT:  Certainly, Your Honor.  So if -- if

11     the Court will permit, I'll address the objections -- the

12     acceptance objection first and then the minimal role really

13     is the sentencing argument --

14          THE COURT:  Right.

15          MR. ECKERT:  -- and then we'll close with a little

16     bit of background about Mr. Coles.  I think first off, let

17     me start with the standard for acceptance, the note itself

18     reads in rare situations or in rare cases.  So it's

19     certainly not an insurmountable bar, but it's a very

20     difficult bar for a defendant who goes to trial to earn

21     acceptance.  This is not a case where there's drugs and a

22     gun and the defendant in opening says well, the drugs were

23     mine, but the gun wasn't.  Certainly, in that case, he

24     should get the acceptance for the drugs which he conceded at

25     the trial.

1    My recollection of what the defendant's position

2  was at trial is sort of similar to what is in his Rule

3  Twenty-nine motion where -- where he said quote what is

4  more, the evidence presented that also suggests that Mr.

5  Coles had attempted a failed prior deal with Daniel, but

6  that he knew vaguely of Mr. Church's plans in this attempted

7  transaction and that is my recollection of generally what

8  their position was at trial that there may have been

9  something going on, but he wasn't really deeply involved in

10  the sense that Coles -- I'm sorry, in the sense that Womack

11  were or Church were.  That to me is a defense.  He's denying

12  his full intent to join the conspiracy.  That's a factual

13  defense and -- and based on that, we would submit that the

14  -- certainly, the two-level departure for acceptance would

15  not be appropriate.

16    I also would note that there was a lot, in my

17  recollection, and lot of debate -- not debate, but argument

18  from the defense about the (unintelligible) interrogatory.

19  Again, as well as the (unintelligible).  I don't mean to

20  suggest a negative inference there, but certainly there was

21  a lot of back and forth during the trial about whether he

22  knew what the amount was from the defense's perspective and

23  when he was fully intending to join in that conspiracy.

24    Again, I -- I would offer to the Court that that's

25  a factual denial of the elements of guilt and as such, he

1   does not qualify for the two-level downward departure.

2           Your Honor, for -- for the minimal role, I would

3   just like to take -- I think what makes the most sense is to

4   go over some of the facts of the case and certainly to the

5   extent we're in argument, let me just preface by saying on

6   the Five sixteen case, the Government would have asked the

7   Court to accept a C plea for the ten years concurrent time

8   and unless the Court needs more on that, I won't -- all --

9   all of my argument will be based on the Four ninety-six.

10          THE COURT:  I don't think I do, and I really

11  understand Ms. Chavar's argument with respect to minimal or

12  minor role to be directed to the Four ninety-six conspiracy.

13  Correct?

14          MS. CHAVAR:  Absolutely.

15          THE COURT:  Right.  Okay.

16          MR. ECKERT:  Okay.  Very well.

17          THE COURT:  That's what I understood --

18          MS. CHAVAR:  Yes, and -- and we're not all

19  contesting --

20          MR. ECKERT:  Sure.

21          MS. CHAVAR:  -- the ten-year C plea.

22          THE COURT:  Right.  Yeah.

23          MR. ECKERT:  Okay.

24          THE COURT:  And -- and so we're doing some back

25  and forth in -- with respect to the objections, but I

1  thought your argument was really as to Four ninety-six and

2  so by all means --

3         MS. CHAVAR:  Absolutely correct.

4         THE COURT:  -- yeah, address that --

5         MR. ECKERT:  Okay.

6         MS. CHAVAR:  Thank you.

7         THE COURT:  -- Mr. Eckert.

8         MR. ECKERT:  Certainly, Your Honor.  So it's --

9  it's certainly true that the way evidence came out, of

10  course there was a wire on Church, so a lot of the evidence

11  against Mr. Coles is -- yes, a lot of it is Church and Coles

12  talking, but a lot of it was really Church and Womack

13  talking about Coles.  That's how we learned about the email

14  first.  That's how -- before the first calls that mentioned

15  Coles aren't really with Coles, but it's important because

16  it shows that he was involved at the beginning.  He was

17  involved in the planning stages, and in fact, he's the one

18  that had the prior relationship with Mr. (unintelligible).

19  I mean certainly Mr. Womack did too clearly, but this --

20  this instance does not appear to be the first time that Mr.

21  Coles and Daniel had ever communicated.

22         In fact, he's the one that had the separate phone

23  number, you know, going real quick to the end, if we

24  remember, one of the last calls when Daniel's not calling

25  him back, Coles says to Church oh no, I have this number and

1    Church says oh no, well, wait I had a different number for

2    Daniel, so clearly there's communications happening again,

3    during the entire course of the conspiracy between the

4    defendant and Daniel. Not only that, of course, there's the

5    emails. I'll get to the specifics of that in a second, but

6    clearly there's -- at one point, Mr. Coles is on the wire

7    with Church scrolling through his emails with Daniel. This

8    is not a person who is kind of in it or maybe in it or in it

9    a lot less. The (unintelligible) scenario where -- where he

10    was going to get a much lesser amount as the Court found.

11    That's not what this --.

12          THE COURT: Are you using email and text message

13    interchangeably here?

14          MR. ECKERT: Yes. I'm sorry.

15          THE COURT: All right.

16          MR. ECKERT: What I mean is -- is things that are

17    different from a phone call --

18          THE COURT: All right.

19          MR. ECKERT: -- and -- and I think they were

20    referred to by Mr. Coles in talking to Mr. Church on the

21    wire, but as well as Church and Womack on the wire talking

22    about Coles other way to communicate with the --

23          THE COURT: With Daniel.

24          MR. ECKERT: -- Mexican source or -- or Daniel.

25          So -- in fact, if we look at on January 27th which

1  again is in the beginning -- towards the beginning stages of

2  the conspiracy, Church told Womack, Diaz [phonetic spelling]

3  just called me saying you were going to text him, call me

4  and have him call me indicating that Coles was going to have

5  Daniel call Church.

6      Again, indicating that even though a lot of the

7  evidence is coming from Church and Womack, even on January

8  27th, Coles is still independently reaching out to Daniel

9  and independently -- not independently, but on his own calls

10  or texts or emails.  We don't necessarily have the full

11  wording of, but we know that he's part and parcel of the

12  effort to get the drugs up to Chester.

13      Defendant Coles, on January 29th, calls Church, he

14  hitting me like crazy too indicating that Daniel had been

15  calling him as well.  February 1, 2014 this is -- one of the

16  things that the defense makes -- I think makes a lot of hay

17  about in our sentencing memo is the way that Church refers

18  to Coles at one point as the bull.  He also repeatedly

19  refers to Daniel as the bull.  I'm not here to discern the

20  -- with precision what was in Church's mind, but the point

21  is he calls people bull throughout the wire.  He referred to

22  the defendant as the bull or he referred to Daniel as the

23  bull.  It's a term he uses.  It does not mean a young bull.

24  Certainly, Mr. Coles is younger than Mr. Church.  We would

25  certainly concede that, but it's not in the sense of this is

some eighteen-year-old or nineteen-year-old. Someone who is under my wing. This is just the way that Mr. Church talked on the wire.

And I say that because on February 1st, Church tells Womack, tells Daz, meaning Coles, to hit the bull which was to call Daniel and again on February 3rd, D-rock meaning Womack indicates that he had already shown Church the information from Daniel. Defendant Coles said that he had emailed Daniel telling him to call Church. Again, so I say these dates only because I think it's important when assessing minimal role especially in a case like this where we have well, Church is on the wire and maybe he had a hundred calls and Coles only had fifteen calls. Well, therefore, Church must be more in it than Coles. I think when you actually break down the dates from the 27th through February, you see that even though we don't necessarily have the precise wording of Coles, he's certainly in the conspiracy and he's in it just as much as Womack is.

Your Honor, if I may just have one second?

THE COURT: All the time you need, Mr. Eckert.

MR. ECKERT: Thank you. So I think that essentially concludes the argument on the minimal role. On -- on the drug amount, to the extent the defense makes arguments to the Court about well, it's not really fifteen to fifty kilograms and the offense level should be lower, I

1    would just reference at one point, Daniel on the wire says

2    eighteen to twenty pieces which the agents testified

3    referred to kilograms.  We would submit that that's

4    certainly sufficient evidence for the Court to conclude that

5    the amount should be -- at one point Daniel actually

6    mentions that he has thirty kilograms, but he says later

7    that eighteen to twenty were contemplated by this deal.  We

8    would submit to the Court that that's certainly sufficient

9    evidence to prove by a preponderance that eighteen to twenty

10   was the amount and the guidelines should be based on -- the

11   guideline calculations should be based on that amount.

12        Real quick, Your Honor, I just want to mention the

13   -- the first setback only to put a couple of things on the

14   record.  Certainly, we -- we withdraw the Eight fifty-one

15   and the mandatory in this case is ten years.  I only note

16   that he -- the defendant really receives the benefit of

17   timing.  Had this case arisen now, certainly the -- the

18   state sentence he did would be a predicate qualifying

19   offense under the first set back.  Now the mandatory would

20   only be fifteen if he was indicted today.  It would not be

21   -- it would go from twenty down to fifteen, but he really

22   does receive a great benefit from that act in that his

23   mandatory goes from twenty years to ten years because we did

24   not plead the Apprendi facts of his incarceration in the

25   indictment.  I understand the Court is well familiar with

1   that. I don't mean to belabor that -- belabor that --.

2        THE COURT: That's important for the record that

3   we acknowledge that.

4        MR. ECKERT: I appreciate that, Your Honor. So

5   I'll conclude, Your Honor, just with a couple of things

6   about the background of Mr. Coles, which I think lend itself

7   to a sentence that approaches the guideline range. You have

8   a gentleman who at eighteen has a first felony for

9   corrupting the morals of a child. At nineteen, has another

10  misdemeanor. At twenty, is charged and convicted of fleeing

11  which in the grand scheme of things we might look at and say

12  well, that's not the world's greatest offense, but it

13  indicates that he does not follow the directions of law

14  enforcement and he is not willing to conform to the rules

15  that we have in society.

16        At twenty-one, he picks up his first felony drug

17  offense. He gets a county sentence. He's certainly

18  afforded a break at that point even though it's not his

19  first contact with the justice system and I'm not -- and

20  that makes sense, he's twenty-one years old. It's a small

21  amount of drugs. He -- he absolutely deserves a county

22  sentence of eleven and a half to twenty-three. Then at

23  twenty-four, he gets his first concealed weapon offense

24  which is important because then again at twenty-six, his

25  second felony drug offense involves a firearm and it's a

gradual level of not just conduct, but the sentences aren't -- he's not getting the message.

At that point, he does his first state time and he gets thirty to sixty months state time and he comes out. He's on probation. He gets misdemeanors -- two misdemeanors at age thirty-one and at age thirty-two is arrested in this case and now he's looking at significant federal time.

Your -- Your Honor, based on that, a significant sentence is absolutely warranted in this case based on his conduct, based on the involvement that he had in the conspiracy, and we ask the Court to impose the low end of the guidelines. Thank you for your time.

THE COURT: All right. Thank you, Mr. Eckert. I really neglected to give this proper context as I was setting the stage earlier, so let me do that now and go back to the Pre-sentence Investigation Report.

First, with respect to the factual findings, I'll adopt those as the findings of the Court subject of course to argument, but do we agree that as calculated and again, subject to Ms. Chavar saying it should be calculated differently, that the offense level was thirty-seven and that the criminal history category is six.

MR. ECKERT: I concur with that, Your Honor.

MS. CHAVAR: Yes, subject to the --

THE COURT: Subject to argument.

1              MS. CHAVAR:  -- exceptions.

2              THE COURT:  Right.  Right.  Which would yield a

3 guideline range of three hundred and sixty months to life,

4 unless Ms. Chavar were to persuade me to in some way change

5 the calculation.  Do we agree on that?

6              MR. ECKERT:  I do, Your Honor.

7              MS. CHAVAR:  Yes, Your Honor.

8              THE COURT:  All right.  I -- I neglected --

9              MR. ECKERT:  Sure.

10            THE COURT:  -- to just put that in context.  We

11 know what we're talking about.  Let the record be clear so

12 that there's no ambiguity.  With that, Ms. Chavar, whenever

13 you're ready and you can address the Court from there, the

14 podium, wherever you're most comfortable.

15            MS. CHAVAR:  I would like to approach.

16            THE COURT:  Wherever you'd like, Counsel.

17            MS. CHAVAR:  Thank you.  I have a few things to

18 bring with me.

19            THE COURT:  Take your time.  Regrettably, our

20 podiums have not caught up to the digital age, so --.

21            MS. CHAVAR:  If I don't have it in front of me, I

22 might forget.  Okay.  So I think you want me to just start

23 and weave the arguments in as I --

24            THE COURT:  However -- however you would like to -

25 -

1    MS. CHAVAR: -- go?

2    THE COURT: -- proceed, Counsel.

3    MS. CHAVAR: Okay. So I like starting from the

4  beginning. You know Mr. Coles is not very similar to most

5  of the defendants that end up in this courthouse on drug

6  trafficking charges.

7         He didn't grow up not knowing where his next meal

8  was going to come. They always had electricity and water.

9  He got clean clothes. He had new clothes. You know so on

10  the surface it seems like everything was fine for him and

11  there wasn't really any reason that he needed to do this.

12        But his earliest memories of his mother and I mean

13  no disrespect to her and -- and nor does her son and -- and

14  Your Honor, at this time, his cousin Donna is in the room

15  and at some point his uncle who went to move the car will be

16  --

17    THE COURT: Is -- is that --

18    MS. CHAVAR: Yes.

19    THE COURT: -- Mr. Coles' uncle?

20    MS. CHAVAR: Okay. James.

21    THE COURT: Good morning, sir.

22    MR. JAMES COLES: Good morning.

23    MS. CHAVAR: The house was like a party house the

24  minute you came home from work on Friday nights. There's no

25  dispute that she worked hard. Everything he had, all of

those comforts I just said, she provided singularly. His father was a heroin addict. Never knew him. Knew who he was but didn't know him and the house was literally a twenty-four seven party until work on Monday.

At five years old, he had an aunt that gave him a line of cocaine. After a while, you grow up with that at that young of an age, you -- you're sort of desensitized to it. You don't really understand that it's bad behavior because his mother is or was otherwise very responsible until he got to middle school and other people were aware.

He lived in the same neighborhood, same house pretty much all his life, and people talk so the children would hear it from the parents and don't want you at that house on weekends, I don't know what's going on there, and then he would be teased because his mother was a cocaine addict and it was known and it was a difficult thing for him. He is very prideful. Criticisms are -- he has a hard time hearing as a criticism. It's more I think an issue of low self-esteem and that -- facing that at school, he didn't really want to go anymore, but he kept going while he was smoking pot because somebody else at one of those parties had introduced him to that and told him it'd be easier to get through school and other things and he started drinking also around that time and he has, and he knows this, he has an alcohol -- he has a problem with alcohol. He's an

alcoholic and he needs help and he said that several times.

Just before he went in, he was doing Percocet daily because that sort of helps you keep drinking, so as part of my sentencing request, I am going to ask for treatment for him.

By the time though that he was fourteen to fifteen years old, he was a very good athlete and it was, you know, a reason that he would go to school. He was apparently very good in -- he'd -- all -- for some reason, it seems like children, especially when they're growing up -- I don't mean to be genderist, especially boys, they really want their family to see them play a sport. I raised a boy. It meant everything to him that I was at every snowboarding competition because that's what he did. Tonight, I'm going -- my nephew is playing in the Delaware Blue/Gold game. I don't know if Your Honor is familiar. It's a huge honor. It has to do with the Delaware Disabilities Association and it's all stars in academics from the state. He is more excited that all of his aunts and uncles and any of the cousins that could come into town are going to watch him tonight than he is at playing at the University of Delaware Stadium.

Nobody ever came to see him play, ever for anything. That sounds silly like oh, poor you, you know, no one comes to see you play. It's a big deal to young men, to

1    young women, and I think it was even harder for him because

2    the reason why his mother was never there was because she

3    was partying at home on the weekends and then Donald Womack

4    started coming to the games and cheering him on, bringing

5    groups of people with him.

6         He refers to that in the Pre-sentence Report when

7    he says only the drug dealers would be there to cheer me on

8    and Donald Womack was there after the game with a soda,

9    something to eat, talk to him about how he played, give him

10   some pointers.  He took him under his wing and this was a

11   kid that really wanted a father and then by the time he was

12   fifteen years old, Womack had him selling drugs for him and

13   that went on.

14        You know the criminal history is clear.  There

15   are, let me pull up my notes on that if you'll give me a

16   minute, ten criminal history points, pretty much three

17   offenses.  The two possessions with intent to distribute and

18   a corrupting a minor which is not a felony charge.  The

19   other charges were dropped.  He had a six- to twenty-three-

20   month sentence on that.  I think he did not quite two months

21   in.  In 2004 when he was twenty-one, he had a possession

22   with intent to distribute, eleven and a half to twenty-three

23   months and that was for selling point forty-seven grams and

24   no notation of finding any other quantity on him at that

25   time or a gun.  So that's one half of the -- the two

predicates that increase him five levels. It's a prior
where he did seven months in. It seems disproportionate to
me that an offense that you do seven months for is going to
increase you that many levels.

We do not dispute that the second possession with
intent to distribute is a qualifying predicate nor do we say
that it should not be. But for other reasons, I want to
note he did eighteen months on that. Up until now, the most
time he ever spent -- no, I'm sorry, Your Honor. I
misspoke. He did twenty-four months in on that. That was
the most time he ever did in jail until now. I think he's
about five years, maybe a little more in now. I disagree
with one of -- well, with a few of Mr. Eckert's statements
of course. I do think he's capable of following the rules.
I do think he has and has shown some respect for law
enforcement because he's never violated his paroles.

He was released in 2006 -- I'm sorry he was
released in 2009 on the second possession with intent to
distribute and was discharged -- the sentence was discharged
in 2012 with no violations. Same with the gun charge which
gave him one criminal history point, two years suspended, no
violations. The first PWID, no violations. PWID, I
apologize, possession with intent, no violations on release,
so he -- that's demonstrated ability to follow the law and
that's demonstrated respect for the law.

He tells me that Womack, until he -- until -- from
my understanding, Donald Womack went in on a state sentence
I believe when he was around twenty -- twenty-one years old.
Up until that time, he was pretty much like his father.  He
taught him how to drive.  Let him drive his car.  Did all
the things that a guy wants their father to do for him and
then when he came out, he sought Nathaniel out and wanted to
pick up where he left off.  I understand too that Womack is
not really the kind of person that you easily say no to.

If you look at the offense conduct in Five one
six, the conduct that we entered a C plea on, he's talking
to Dorsey.  I think it's characterized by -- as getting
advice from Dorsey how to have his business, talking to
Womack.  Of course, it demonstrates what the Government
offers it too, that he was involved in selling drugs, but it
also corroborates he is really kind of just getting into
that.

I think my argument to some extent was
misunderstood on the minimal role for the Four ninety-six
conduct.  We don't argue that he was part of that
conspiracy.  That's -- that's not the argument and he
doesn't have to be not a part of the conspiracy to get
minimal role reduction.  In fact, he has to be part of the
conduct.  My understanding is that for that to apply -- for
that reduction to apply, the individual has to be a

participant in offense conduct with other participants. To
be less culpable doesn't mean you're backing off of the
conspiracy. That's not the definition of less culpable as
far as my assertion for why he is deserving of that
reduction.

If you just -- if you think about it whenever you
have a group of people working towards something, there's
pretty much always a leader. Pretty much always somebody
sort of secondhand there to the leader and then there's the
soldiers, the followers, you know, taking the rule -- the
orders and it's to that that I speak. That of those four,
his conduct was far less. I tried to break it down as
clearly as I could in my memo and I -- I pointed to the
Government, okay, the Government's evidence discussing what
his role was. I think that we get about second day in,
third day in. There's pretty much no discussion of -- of
anything that Mr. Coles had done then. There was one text
exchange with Daniel.

Then when you get to the January 29th to the
February 4th, there's a text that Daniel sent him which is
curious because he -- it's right after Daniel gets the three
hundred dollars and Church and Pinkney, who he had been
talking with all the time, trying to reach him and he texts
Daniel -- I mean he texts Nathaniel to say I'll be in
Houston tomorrow.

1          Now the Government lays out that Daniel was told

2    -- clearly told your -- he's not in this.  I'm going to see

3    you in Houston.  Church gets annoyed because Daniel says to

4    him I got a text from the other cousin.  If I could

5    hopefully find it quickly.

6          Church goes no, there is no other cousin.  This is

7    me.  You're dealing with me, so it's interesting then that

8    Daniel reached out to Coles to say I'll be in Houston

9    tomorrow after being told he's not the one going.  He's not

10   part of it and I think that does sort of militate that

11   there's probably never any intention of selling any drugs to

12   them.  I think it also indicates that (unintelligible) was

13   seen as low level at least to Daniel.

14         There was days of figuring out when they could

15   pick up the R.V.  What route they would take to get to

16   Houston.  All those discussions.  Pinkney and Church.  For

17   purposes of this guideline reduction, those are the things

18   you look to.  Not whether he was backing away or not really

19   part of the conspiracy.  He was part of the conspiracy, but

20   he wasn't part of the planning and he wasn't calling any

21   shots.

22         I'm going to flip ahead to Amendment Seven ninety-

23   four, two three B one point two with the list of factors

24   which I -- I -- I didn't go into any great discussion in my

25   sentencing memo, but if you look at the Headley factors,

United States vs Headley, which this circuit for many years
has used to determine whether or not an individual earned
that reduction.  The nature of the defendant's relationship
to the other participants.  I think Seven ninety-four -- the
Amendment Seven ninety-four just rewords that a little bit.
It looks to me very much like the Headley factors were sort
of adopted by Amendment Seven ninety-four and then expanded
upon, so I'm just going to discuss the Seven ninety-four
factors and Your Honor could ask me if -- if I haven't
covered everything.

The amendment was drafted and this is one of the
very few times that I'm aware having been working with the
Federal Sentencing Guidelines since 1993 that the Sentencing
Commission said oh we need to do something because this is
not being applied as much as we intended it to be applied
which makes sense because whenever there's a group, there is
a leader.  I'm sure Your Honor has seen in many Pre-sentence
Reports when there's a conspiracy, a leadership role
enhancement, so there's got to be somebody that played a
minimal role.

Amendment Seven ninety-four says to look to the
degree to which Mr. Coles understood the scope and structure
of the criminal activity.  All right.  So that one's like a
little tough to decipher exactly what scope, what criminal
activity.  Okay.  So to what degree did he understand this?

1    Well, I mean he certainly understood that they were trying

2    to purchase some drugs.  Okay.  That's the base.  That's,

3    you know, basic concept of what they were going for.  So,

4    you know, what did he -- what did he know after that?  He

5    knew that they were going to meet in Houston.  He heard

6    that.  Did he know the route they were taking?  Did he know

7    why they were taking an RV?  Where they were getting the

8    R.V. from?  What they paid for the R.V.?  Did he know any of

9    that?  I mean these are the only other factors there really

10   are in this -- this scheme or -- or plan to purchase drugs.

11        Church and Pinkney have a conversation

12   specifically about the route they would take that would make

13   it least likely for them to encounter law enforcement.  How

14   would they know that unless they did it before?  I was

15   surprised to hear the Government say that there was some

16   indication that Coles had dealt with Daniel before.  There

17   is no evidence -- nothing I've ever seen.  As Your Honor may

18   recall that as part of one of the plea agreements, there was

19   an appellate waiver included and in order to counsel him

20   accordingly, I reviewed.  I read those trial transcripts.  I

21   looked at the evidence on that case.  I wasn't there.  I

22   didn't try it, but I know the evidence.  I don't see

23   anything -- any intel that he ever went to Houston before.

24        So, you know, I think he reaches that factor.  Not

25   that he did not know anything, that's not the test.  He knew

1    less than Church and Pinkney knew.  The degree to which he

2    participated in the planning and organizing, again, he

3    didn't map out the route.  You know I'm saying the same --

4    I'm pointing to the same facts pretty much over and over

5    again because, you know, it wasn't a very complicated

6    scheme, but the guideline doesn't say that it has to be

7    complicated to get this reduction.  It says look at the

8    conduct that you're being sentenced on and see if this

9    individual did less.  They use the word less culpable.  It's

10    really did less, played a minor role, less culpable.

11        In fact, the second time he texted Daniel or

12    emailed Daniel, if there was some sort of an exchange of

13    that term in the -- in the Government's facts, that was at

14    Church's behest when he couldn't get in touch with him.  He

15    said to Womack, can you have the boy reach out because they

16    were doing anything at that point to try to get ahold of

17    this guy.  I do disagree with the Government's -- I don't

18    know what to -- the characterization of the bull or the boy

19    or young bull.  I -- I -- if it is a term that Church uses

20    all the time, how come he never calls Pinkney that?  How

21    come he never calls Womack that?  He only calls Coles that

22    in everything I've listened to.  I don't remember hearing

23    him call Daniel that, but I don't dispute, you know, that

24    the Government says he did.  I just didn't hear that.

25        It is a specific term.  It is a specific

designation to somebody who is part of a group. I don't think I have ever, ever in my hours and hours of interviews with clients ever heard one of them say oh no it's just a name. It has a meaning. It indicates a designation. In fact, most of the time, why you're young bull? A lot of the people above you, they don't even know your name. They don't bother because at that point you're a young bull. See if you wear this out if you work through this. I do think it's significant that that's how Coles was referred to. Everybody knew who -- who Church was talking about. Pinkney sort of refers to him that way at one point. It's clearly an indication that of the four of them, he was beneath them. That was his designation.

Did he exercise decision making authority or influence the exercise of decision making authority? Well, young bulls don't have to do that. That's all I'm saying on that and I don't think the evidence shows that either. I didn't see one time that he made a decision on anything. The nature and extent of Mr. Coles' participation in the commission of the -- would be drug deal, the acts he performed, responsibility and discretion of those acts. He made two text exchanges and he received one and he was in the room too when they talked about it.

Again, it's not being offered to say he wasn't really part of the conspiracy. Again, he was. He admits

that, but for this guideline, you have to look at what he
did versus the others. Well, three contacts with Daniel as
opposed to all the other calls made by Church and Pinkney
and -- and -- which is his participation in the commission
and whether or not he had the responsibility and discretion
in performing those acts, not from what I could see on the
record. He was told see if you can get ahold of -- of -- of
Daniel. Find out what's going on. That's what he did. He
didn't talk price. He didn't talk quantity. He didn't talk
specifics, so obviously he didn't have the discretion to
stretch that role any further than what he was told to do
and that's what he did. Not to say he was only acting on
orders and didn't want to do it. That's not what I'm
saying.

        The guideline says to evaluate whether he's earned
this reduction, you have to look at whether he had any
discretion in the role he played. I submit he did not, and
I point specifically to that text that he was told to send
and why and he didn't go beyond that scope. Degree to which
he stood to benefit from the deal. I'm still trying to
figure out what any of them really were going to benefit
from this deal and if it was going to go through. I don't
know how you can agree to buy, I don't know, however many
kilograms of cocaine when you don't even know what the price
is per kilogram -- what the price is per quantity. I mean

don't know that I've ever listened to a wire where they're discussing a deal and there isn't any discussion of price. How was there ever even a meeting of the minds?

Not only was there not any discussion of price, how is it being split up? I never heard any of those. I mean were they getting it? Was Church just going to come back and -- and keep it himself and sell it? Was it going to be split four ways? Again, I don't think young bull gets a quarter if it is being split. More likely, I can't even speak to how that was because there's nothing in the record to indicate how anybody -- what benefit he would have gotten from that.

I guess this is as good a time as any to talk about the quantity that's applied. It's eighteen to twenty kilograms that I agree with Mr. Eckert that I think he said at one point Daniel says eighteen to twenty. At another point Daniel says oh, we got sixty kilograms a couple miles downstate or down -- start out saying something like fifteen. It's never agreed upon. The jury found five kilograms. That's the only definite in this whole equation. I would think that should be guideline -- the base offense level because there's just no proof beyond that. There certainly is no proof on what would reasonably be foreseeable to Mr. Coles out of that quantity.

Your Honor has my sentencing memo where I

discussed the Collata factors and I don't know how to
elaborate on that.  It's very clear that the base offense
level for an individual involved in a conspiracy have to
look at what was reasonable foreseeable quantity to that
individual.  There's no discussion of that in the Pre-
sentence Report and I understand why.  What would you base
it on?  Not a lot of the types of facts that we would need,
you know, to -- to make the kind of decision that means
years in jail for him.  These are not the kind of decisions
that you just estimate because these are life decisions for
him.

I played around with the guidelines a lot trying
to figure out where the many ways his guidelines could come
out, so if he has -- okay.  If he wasn't a career offender,
we start at thirty-two -- I'm going to step back, Your
Honor, and get my guideline book if that's okay?

THE COURT:  By all means.

MS. CHAVAR:  Thank you.  Okay.  So before the five
levels, he's thirty-two -- five levels, I'm sorry, for the
Career Offender Provision.  He's at a level thirty-two.  His
criminal history category is five and that would make him
twenty-six -- well, if he were to get the minimal role
deduction four levels down, if he were to get the acceptance
of responsibility reduction -- I apologize, Your Honor.  I
should have addressed that before I moved on to the various

1   -- the variance discussion I've been having, then he would

2   be down to twenty-six with a criminal history category of

3   five, he'd be at a hundred and ten to a hundred and thirty-

4   seven months.  That's nine to eleven and a half years.

5           With Career Offender, with those six level

6   reductions, he's at fifteen and a half to nineteen and a

7   half years.  At -- at thirty-seven, six, thirty years to

8   life.  It's an enormous jump which is triggered by the --

9   the two and only two prior possession with intent to

10  distribute that he has.  I'm sure Your Honor has had career

11  offenders with more than just two.  You could sort of just

12  pick from their criminal history.  The criminal history is

13  what it is, but it is three felonies.

14          THE COURT:  What is the background of the two

15  firearms offenses here?

16          MS. CHAVAR:  Excuse me?

17          THE COURT:  I said there is the background of the

18  two firearms offenses?

19          MS. CHAVAR:  I think I include that, Your Honor.

20  Am I missing something?

21          THE COURT:  No, I'm just saying that --

22          MS. CHAVAR:  Yeah.

23          THE COURT:  -- that when you talk about what

24  weight should be given -- not drug weight, but what

25  significance I should attach to one of the two offenses --

1    one of the two possession with intent to distribute

2    offenses.  I do look at that in part against the entire

3    record and -- and one of the things in the record which is

4    concerning are the two firearms offenses.

5         MS. CHAVAR:  Firearms offenses are concerning.  We

6    didn't -- didn't dispute that that's clearly a career

7    offender predicate.  Clearly.  And I don't assert that --

8    that the Career Offender Provision does not fit under the

9    guidelines.  It does, you know, the guideline says if you

10   have this, you are a career offender.  I'm addressing these

11   factors more deeply here.  I'd offer that it's a basis for a

12   variance.  Five levels is a lot of time.  Now there's

13   incremental punishment to consider here.  Twenty-four months

14   is the most time he ever spent in jail, the guidelines would

15   have him jump to thirty now.  Donald Womack was recently

16   sentenced as you're well aware, fifteen years I think?

17        THE COURT:  It was an eighteen year sentence where

18   he was the beneficiary of the second step back, but -- first

19   step back, but by virtue of the fact that he had been in

20   federal custody for eleven years and so the -- that -- there

21   were unique factors at play there that resulted in that

22   specific sentence.

23        MS. CHAVAR:  And there always -- look, every --

24   you -- you take every defendant as you find them and there

25   are these different factors, but, you know, sometimes the

1    factors come out arbitrary.

2                 THE COURT:  I agree with that.

3                 MS. CHAVAR:  Mr. Womack did eleven years.  He

4    didn't.  It had to be a pretty serious offense to do eleven

5    years.  It just seems to me that it's -- it's -- to sentence

6    a thirty-some year old man to thirty years for conduct that

7    serious.  It's very serious.  I'm not disputing that.  I'm

8    just disputing thirty year serious.

9                 THE COURT:  I'm mindful of the relationship

10   between Mr. Womack and Mr. Coles.  I'm mindful of the

11   susceptibility he would have had at a certain age --

12                MS. CHAVAR:  Uh-huh.

13                THE COURT:  -- and certainly all those things will

14   be considered.

15                MS. CHAVAR:  He had a period of time before Womack

16   when -- when he got out of jail following the second

17   possession with intent to distribute before Womack was

18   released.  He worked for Tastykake.  He worked for the

19   salon.  Your Honor has the letters.  The -- the gentleman

20   that he worked for at the salon would hire him back.  He was

21   very good.  He's -- he's voiced many times while he's been

22   in custody, while I was representing him, plans that he has

23   for his release.  I think that remorse is shown by the way

24   an individual serves his time.  He has no write offs at the

25   federal detention center.  I mean that's almost -- that's

very difficult to do. I mean it sounds like it shouldn't be, like you just follow the rules like it can't be that difficult, but there's things that happen that's not always within your control.

There's -- it's -- it is to his credit that he has had no writeups, no disciplinary action, nothing for the five years he's been there. He's just trying to do his time and move forward and get back to his daughter who he has maintained a very good relationship with and speaks with often.

Before he went to jail, you have these letters. Many people speak to the presence he was as his father -- as a father. You know it's almost like when you read these letters it's almost like two different people. You know he doesn't really sound like -- the person here doesn't really sound like the person on that wire sometimes and with all due respect to my client and he knows this, he's not always so easy to get along with. He has a little bit of a contrary nature at times when he's adamant about something.

He wants to continue training in barbering and he'd like to get some culinary skills, so I am hopeful that if he is designated, I know hopefully close by Fort Dix so his mother can see him, they do have training there for various vocations along with the drug rehabilitation program which I think he very much needs. He was not always the

young bull for Womack selling drugs.  You know he was the --

the gentleman who dug out the neighbor's cars when it

snowed.  He was the person that treated everybody with equal

courtesy and would smile and say hello every time he saw me

respectfully, and he was always available to assist in

helping anyone in need of driving elderly people to the

markets and various stores.  You know that's a good

challenge in some neighborhoods especially when you grow

older and don't get around as easily, carrying those bags

back, that is a -- a considerable kindness.

He was somebody that -- that was thought to never

be disrespectful towards family or friends or anyone.

Nathaniel would knock on elderly doors and ask if they

needed a ride.  He took my mother to her doctor's

appointments.

THE COURT:  And -- and I have reviewed all of

those letters.

MS. CHAVAR:  Thank you.

THE COURT:  No, I assure you I have read each of

the letters individually.

MS. CHAVAR:  Then I'll leave it at that.  You've

read it.

THE COURT:  And -- and they're part of my file

here on the bench.

MS. CHAVAR:  I -- so did he accept responsibility?

1    Does he earn those two points?  I think the guidelines are

2    clear that if you go to trial and you don't contest your

3    conduct, if your defense is a legal one or the application

4    of the statute, admittedly it was hard at times for me to

5    decipher whether they -- whether it was an impossibility

6    defense or a no contract.  I -- I -- but clearly I think the

7    argument was that yes, they did what they did, but it's not

8    a crime because Daniel was fictitious and there was never

9    going to be a deal.  I think Your Honor sat before it.  It's

10   -- from -- from the closing statements as a whole, it seems

11   that was the advanced argument.  Right?

12            THE COURT:  Well, it -- it would --

13            MS. CHAVAR:  Yeah.

14            THE COURT:  -- it seemed to be advancing an

15   exception to the law of conspiracy that the law does not

16   recognize as an exception --

17            MS. CHAVAR:  Thanks.

18            THE COURT:  -- is how I -- how I took it.

19            MS. CHAVAR:  And like I said, it was difficult for

20   me to decipher exactly, but I think what was clear was that

21   they didn't -- I know -- Mr. Coles didn't contest his

22   factual guilt.  What else do you look to?  Well, you look

23   then to see if he made any pre-trial efforts.  There was

24   attempts at that.

25            THE COURT:  Right.  And I -- and I think we've

1    established a record for that at side bar --

2            MS. CHAVAR:  Very good.

3            THE COURT:  -- which I will take into

4    consideration having heard from both the Government and the

5    Defense.  Not to cut you off, but I'm --

6            MS. CHAVAR:  No, I --

7            THE COURT:  -- I'm -- I'm mindful --

8            MS. CHAVAR:  -- think it was --.

9            THE COURT:  -- of that record.

10           MS. CHAVAR:  I'm fine with -- I think I mistook

11   your direction on that.  I'm going to just ask one moment

12   with my client and then --.

13           THE COURT:  Whatever time you need, Ms. Chavar.

14           MS. CHAVAR:  Thank you.  His mother is in the room

15   today.  I -- do you want to speak?  I think you were

16   undecided.  If you wanted to speak to the judge, now would

17   be your time to do that.  Thank you, Your Honor.

18           THE COURT:  Sure.

19           MS. CHAVAR:  And my client most definitely wants

20   to speak with you.

21           THE COURT:  It's his right.

22           MS. CHAVAR:  Okay.

23           THE COURT:  Ma'am, please proceed that way.

24           MS. CHAVAR:  I doubt anybody would speak as long

25   as I did though.  This is Nevada Coles.

MS. NEVADA COLES: Good morning, Your Honor.

THE COURT: Good morning again, Ms. Coles.

MS. NEVADA COLES: Good morning, Your Honor. I'm here to speak on my son's behalf. He's the only son that I have. I have two children, a daughter and my son and I'm here, Your Honor, to ask if you could show my son some leniency because it was difficult for us as I was trying to work hard to make it (unintelligible) so that they could have and the only thing where I think I failed them the most is that with him being the man that he is today, but I've tried to do everything humanly possible that I could to make life better for my children, but I couldn't make him a man and I know throughout the struggles of his life, he was more or less like my protector for me and my daughter.

He always looked out for us. He always like I been in and out of the hospital a lot with the conditions that I have since I retired from General Motors on disability and he helped me to get back and forth to my doctor's appointments. He helped me also to find a way to eat right so I can stay healthy and I'm not going to lie to you, Your Honor, since my son hasn't been in my life, it's been really hard and difficult for me to like want to stay up to like want to keep myself together, to like try to keep my mind right because it seems to me with him in here serving a sentence for time, I'm not so certain that

1     something is on the outside and he is a good person.

2         I haven't known him to bring any harm or will to

3     anybody. He's always not only been there for me, but he's

4     been there for his sister, his nieces, his nephew, and his

5     great nieces, and mainly his daughter and as I proceed, Your

6     Honor, I would like to read a letter that his daughter wrote

7     --

8         THE COURT: That -- that's fine, ma'am

9         MS. NEVADA COLES: -- to you. She says good

10     morning. My name is Camilla McCready [phonetic spelling].

11     I am thirteen years old and I am the daughter of Nathaniel

12     Coles. I apologize I am not able to be here this morning,

13     but being that I now live two hours away, also I do not want

14     to see my father sentenced to something I may not like. I

15     have decided to stay home and write this letter.

16         Let me -- let me start off by saying how great of

17     a father Nathaniel is. He is caring, loving, grateful,

18     funny, and just the best of the best. I have the best

19     memories of my life with him such as going to eat -- going

20     to eat out, shopping, family, cookouts, and even with having

21     sleepovers with him. Also, we used to go pick up my god

22     sisters and just go out to fun places. Also, I just wanted

23     to let you know how I would feel if my father was taken away

24     from me even longer than what he has already been. I am

25     very smart. I try hard to make my father proud, but it is

1   very, very hard to do so without him not being able to be

2   here with me.

3           My father is very over protective with me.  He is

4   very over protective with me too, but I wish he was here

5   actually be able to protect me and watch me grow up and

6   blossom into the smart, amazing, and beautiful young woman

7   that I can possibly be, and guide me to do so as I ask that

8   the judge may take this into consideration that Nathaniel

9   Coles is a great person and how loved and (unintelligible)

10  he is to all people including me.  I hope you have a great

11  day.  Sincerely, Camilla McCready.

12          THE COURT:  Thank you, ma'am.

13          MS. NEVADA COLES:  Thank you, Your Honor.

14          MS. CHAVAR:  She certainly does sound smart and to

15  his benefit, he has often told me when I would see him of a

16  recent call with her.  I know that he -- he promotes her

17  working hard in school and that's obvious that she has been

18  and to be busy after school, so that she doesn't fall into

19  bad ways.  He's -- he's been a success at some things.  He's

20  an attentive, caring father who wants better for his

21  daughter.  He's shown he's able to hold a job and to perform

22  well at that job.  You have the letter from the employer.

23          Your Honor, I have these notes here.  I'm jumping

24  around a little because I forgot that -- to mention that

25  Pinkney who testified at the trial had made statements that

he didn't even know Coles until the night before the deal or the night before they started to talk about going to Texas. He says it a couple of times and I just submit that as, you know, in furtherance that he was the nondescript young bull for the most part.

I -- I spoke to you at length and I'm going to wrap it up now before you hear from Mr. Coles that my sentencing memorandum, I had hoped to break it down where if Your Honor were to reduce the guidelines as calculated in the Pre-sentence Report, it comes down to thirty-one, six, which is a guideline range of one eighty-eight to two thirty-five and then I'd offer the variance in consideration of the career offender application and the drug quantity and there being no reasonably foreseeable quantity attributed to him which the Collata court insists there must be and I ask for a sentence less than fifteen years from that bottom of that guidelines range from the Career Offender Provision and then I looked to what his guidelines would be if he wasn't given career offender and it came pretty close. It was somewhere, if you combined those two, I could pull it up again on my notes, but it was around like eleven to fourteen years.

You know which I offered to say that a sentence of less than fifteen years is -- is not incongruent with really the guidelines. He has the ten. That will run concurrent

1    with whatever Your Honor imposes.  A sentence between ten

2    and fifteen years is certainly sufficient punishment for

3    this conduct where he never basically harmed anyone.  It's

4    certainly long enough for deterrents.  He's already

5    demonstrated deterrence by his behavior while incarcerated,

6    the classes he took while he was at the federal detention

7    center.  That is -- Mr. Boyer did a very thorough job in the

8    Pre-sentence Report and he lists them, and I don't remember

9    the paragraph number off the -- I'm sorry, Mr. Boyer.

10           THE COURT:  I'm familiar with the --

11           MS. CHAVAR:  Yes, thank you.

12           THE COURT:  -- background, Ms. Chavar.  It should

13   be obvious from some of my questions and comments.

14           MS. CHAVAR:  Okay.  And -- and his plans for

15   moving forward.  Rehabilitation.  It's enough time to take

16   up a trade while he's in custody and to get his drinking and

17   drug use under control.  For all these reasons that I've

18   discussed here today and ask the Court to impose a sentence

19   of less than fifteen years knowing it can't go below ten.

20   There is a ten-year mandatory minimum and I'll bring Mr.

21   Coles to the --.

22           THE COURT:  Before you do --

23           MS. CHAVAR:  Okay.

24           THE COURT:  -- anything further, from the

25   Government, Mr. Eckert?

1    MR. ECKERT:  No, Your Honor.  I've said my piece.

2    Thank you.

3         THE COURT:  All right.  It appears that Mr. Coles'

4    uncle would like to be recognized.

5         MS. CHAVAR:  Yes.  May I --?

6         THE COURT:  You may.  You may --

7         MS. CHAVAR:  I'm sorry.

8         THE COURT:  -- have a moment to confer with him.

9         MS. CHAVAR:  Your Honor, will you hear from his

10   uncle?

11        THE COURT:  I will.

12        MS. CHAVAR:  Thank you.

13        THE COURT:  Good morning, sir.

14        MR. JAMES COLES:  Good morning, Your Honor.  My

15   name is James Coles.  I am a union worker for forty years

16   and that's my nephew and in doing work, they say safety

17   first, you know, so when you say safety first, that's what

18   they strive for, safety first and by me being a worker, I

19   just come today to ask for mercy from the judge for my

20   nephew being his stupidity -- his stupidity as far as

21   following other peoples.  You know what I mean?  I've been

22   his uncle.  I watched him grow.  I tried to teach him right.

23   He -- where the government said that women didn't need a man

24   in the house.  They live in Section Eight and they took the

25   father and put the responsibility on the fathers for child

1    support.  I made it through child support.

2           Here I am as a man and I am the baby boy of twelve

3    of my family and I made it.  I made it to a point where I

4    raised five daughters and they graduated from high school

5    and I seen (unintelligible) high school and finished and I

6    was there and they said I wasn't nothing from the beginning,

7    but I was able to be there and see them prosper and here is

8    my nephew.  He's a conspiracy, so when do you say conspiracy

9    starts?  You know if he's following other people and he's

10   influenced by them.  See?  He had influenced at his father.

11   His mother worked at General Motors.

12          Here I am a man that they said would never be

13   nothing and I raised five daughters and I don't owe the

14   government any money and I'm just asking for you to have

15   mercy on the kid that made the wrong decisions.  He didn't

16   kill anybody.  He had guns.  He been in jail.  He didn't

17   kill anybody.  He followed the wrong people because the

18   government wouldn't allow us to put a foot in their butt.

19   Like when I grew up, I have uncles.  If I got out of line,

20   they put foot in my butt and I know not to do that, but by

21   them saying you can't hit the kids and a woman can't raise a

22   child.  She can't raise a man because when a man becomes a

23   man, he -- he acts out.  You see what I'm saying?

24          And that's all he was dealt with and he didn't

25   have a father in his life and -- and -- and the road that he

1   chose -- he chose the easy way because hard work does pay

2   off.  Believe me.  I believe in that.  I'm a statistic that

3   it does work hard, and it pays off.  I never been in a

4   penitentiary.  I never robbed nobody.  You see what I'm

5   saying?

6           THE COURT:  That was before you were a union

7   worker, you didn't know.

8           MR. JAMES COLES:  Yes.  I walked down the street

9   and if the cops caught me asking for a P.P. number.  I told

10  them I don't know what a P.P. number is.  I'm supposed to be

11  a criminal, but here today I ask for mercy for a man that

12  conspired to do something that he might not even know he was

13  into.

14          THE COURT:  I understand your position, sir.

15          MR. JAMES COLES:  -- and that's all I ask, Your

16  Honor.

17          THE COURT:  Thank you.

18          MR. JAMES COLES:  I appreciate it.  Thank you.

19          THE COURT:  Thank you, Mr. Coles.

20          MR. JAMES COLES:  Thank you.

21          MS. CHAVAR:  Thank you.

22          THE COURT:  All right.  Mr. Coles, this is your

23  chance to be heard.  No need to rise, sir.  Just -- you can

24  be -- stay seated and pull the microphone over closer to you

25  if you would.  Yes, sir.  Go ahead.

MR. NATHANIEL COLES: First and foremost, Your Honor, I would like to apologize to you and this courtroom for the actions that caused me to be in front of you today and I also would like to take this time to apologize to my mother and my entire family for the embarrassment and the anguish that I have brought amongst them in the community that we live in for my -- for my reckless -- for my reckless actions that has me in this predicament that I put myself in today.

Basically, I, Nathaniel Coles, admit that I was -- I was -- I was wrong and for my part that I played in the -- in the -- I mean for the role that I played in the offense and the crimes that I committed and that I was found guilty at -- at trial at. I mean -- I just -- life wasn't always easy for me growing up -- growing up in Chester. I mean my mom -- I mean which she means the world to me. I mean she's my biggest fan and my worst critic. She -- she basically raised me and my older sister as a single parent just me and my sister, we -- well, she's my big sister. We're seven and a half years apart and my grandparents helped to raise me and my sister also. (unintelligible) deceased.

As soon as my sister -- as soon as my sister became of age, she became my primary babysitter while my mom would be at work at General Motors, the plant in New Castle, Delaware. My mom basically worked second shift so she would

leave once -- once my sister get out of school, my mom would

be on her way out the door to work and my mother wouldn't

return from work until probably about -- she would leave to

go to work at probably about two thirty in the afternoon and

she wouldn't return from work Monday through Friday until

about one thirty, two o'clock in the morning, so therefore,

I had to be with my sister twenty-four/seven.  She had to

take me everywhere whereas though as I got older -- my

sister's name is Shauntay [phonetic spelling].

When I got older, people were calling me looking

for Shauntay because I was always with her all the time, so

I mean I didn't know which way to take it as either a

compliment or if somebody was basically making fun of me,

but other than that, growing up, I mean my sister was always

doing hair, so when I was playing -- like when I was playing

basketball from -- from the age of five up until I was

twelve, being as though my mother working the hours that she

work once she get off of work on -- she probably get paid

Thursday night and once she get off of work at Friday, I

mean my mother was -- was young raising two kids on her own.

She wanted to enjoy herself, so that's basically

what she did, so on the mornings when I would have my games

and my mother would basically be, you know, passed out from

-- from the night before from pulling an all-nighter

drinking and her and her friends would indulge in doing

drugs and things of that nature. I mean she didn't know
that I knew what was going on, but I was a pretty smart kid,
so I actually knew what was going on when I would see a -- I
mean a bunch of other folks that was in the -- would be in
my mother's dining room all hours of the night passing
around, you know, rolled up dollar bills and with little
bags of things with white contents in it, so I actually knew
what it was, but I didn't know the exact (unintelligible).
I knew it was bad. I definitely didn't believe it was good.

So as time went on, I mean as -- as you already
know, my father wasn't in my life. He was basically -- he
was out of my life since I was two years old and that was
due to him being addicted to heroin and him being in and out
of -- in and out of prison basically, so I never really had
a relationship with him, so as the time goes on of me
playing (unintelligible) basketball, I never had any
thorough support at that time. I mean like I said before,
my mother did what she could. She kept a roof over me and
my sister's head. She kept food on the table. She kept
clothes on our backs.

But I still was missing that part that I needed
which was my father and my best friend that I had at the
time, his father was always in his life and he was always
around him, so that led me to feeling some type of
insecurity of well, why my dad's not around? Does my dad

actually want me?  Is he ashamed of me?  Why isn't he -- why
-- why doesn't he take the time out to do this when I'm so
good at basketball and this is my love, and this is my
passion?  Why isn't nobody here to -- to see me actually
play?

So then at that time, that's when I come to meet
Donald Womack.  Excuse me.  So me and Donald Womack, it was
like -- honestly to give you an answer for it, it was like a
breath of fresh air.  It seemed as if he understood me.  He
cared and he showed me basically a -- a caring that no other
man had basically showed me and it was like I just -- I just
took to him as if he -- as if he was my father because I was
allowed to do certain things.  I mean he actually -- he
actually tell me right from wrong, but he also would allow
me to do things that I want to do as far as he would give me
money.  He would allow me to drive -- drive his vehicles or
whatever and even though he had many other children, he
still made me feel as though I was one of his.  You know
often times, he would tell me he looked at me as one of his
own.

So as time went on, he -- he had -- once I had
started -- once he had introduced me to selling drugs.  He
had went to prison and I believe he had returned -- returned
back home in 1998, so when he returned back home in 1998,
that's when I basically started selling -- selling drugs for

1    him, so at that time -- as that time goes on, he's still

2    doing basically the same thing.  He showing me the love that

3    my father never showed me and, in all actuality, when my

4    father did attempt to try to be a part of my life, it was as

5    if who are you?  This man -- this man over here has been

6    there more than you have, and I basically showed more

7    respect and love towards Donald Womack than I did to my own

8    father when he -- when my father did attempt to try to be in

9    my life.

10          He probably came home from doing -- my father came

11   home from doing a five year sentence around that time in '98

12   and he probably was home for about three to four months

13   until he violated his parole and went back to prison, so

14   that was -- that right there for us to build a relationship,

15   when I did eventually try to make a relationship with him,

16   that ended that right there, so therefore, as time went --

17   as time went on, I still was basically around Mr. Womack

18   every day just about and he would help me with things as far

19   as paying for things for me for school and things of that

20   nature, and then once -- once he had years -- well, probably

21   about five years later after he came home in '98, he had

22   went to prison for -- well, federal -- federal prison and

23   being as though he was -- he was basically in my life a lot,

24   I felt obligated to be there for him while he was in prison.

25          So I supported him -- well, I was one of many who

supported him while he was in prison financially, so when he
returned home, I think it was October 10, 2013 -- well, I
went and did -- when I went to prison myself and did my two
and half year sentence, I felt -- I felt low because I felt
like I let him down because I was in there and wouldn't be
there for him -- continue being there for him financially as
he was there for me when -- when I was young growing up, so
once I came home from my -- from my prison sentence, I
didn't want anything to do with selling drugs or anything
anymore.  I just wanted to work because I can't -- I had
encounters with numerous -- numerous inmates that was in
state prison who had life sentences for drugs and firearms
and that wasn't the route that I wanted to take any more.

So when I came home, I just wanted to strictly
work, so I had gained -- I had gained a trade for
specialized carpentry, so my focus was I'm going to just
come home.  I'm going to cut hair, and then my uncle already
had his own contracting business, and I said I was going to
work with him and I was going -- and then it just so
happened in the midst of me doing that, one of my best
friends, he winds up getting his own Tastykake route, so
that's how I came to be working on that with him also.  So
it was basically financially I was okay.  I wasn't worried
about selling drugs.  I didn't need to sell drugs.

I was able to support my daughter and make sure

1  that she didn't want for nothing and I also wanted to

2  continue being in her -- I wanted to also continue being in

3  her life as opposed to how my father was never in my life.

4  I always swore to myself that I would never be like him,

5  that I would always be there for my child and that I

6  wouldn't leave her and I wouldn't steer her wrong as far as

7  I would be there attending parent/teacher conferences,

8  eating -- I even attended all the meetings even the get-

9  togethers with the kids.  I would go to school and I would

10  go to the -- to my daughter's school and I would sit and

11  read to the class and everything.  I no longer wanted people

12  to look at me as being a drug dealer.

13          THE COURT:  So why'd you go back?

14          MR. NATHANIEL COLES:  Why did I go back to selling

15  drugs?

16          THE COURT:  Yeah.

17          MR. NATHANIEL COLES:  As I said, when Donald

18  Womack came home, October 10, 2013, he was in the halfway

19  house up here at Liberty I think it was on Lehigh and

20  Allegheny.  When I first went to meet him his first day

21  home, we had a sit down meeting in the cafeteria of the --

22  the halfway house and I asked him who -- after I gave him

23  some -- some money, I asked him what did he -- what did he

24  plan on doing because he said that he had his personal

25  trainer's license.  He said to me that he wanted to get back

on his feet, so I'm like okay.  So you have your personal

trainer's license so that means you would be a personal

trainer and you can make a lot of money doing that.

He said no, I need you -- I want you and I need

you to help me get back on my feet.  So I basically

understood what he was saying, but I didn't want him to know

that I understood what he was saying so played -- basically

played dumb, so then he went on to elaborate on it and tell

me well, I made -- I made some -- I met some people and I

just need you to help me get back on my feet.  He said once

after you help me get back on my feet, you can go and do

whatever it is you were doing, but in a way, a hundred

percent fully, I didn't want to, but being as though it's

him and the influence that he had on me, it was just that

how do I tell this man no?

I mean he has been there for me in his own kind of

way, so how do I figure out and tell this man no and when

everybody else in my corner as far as my best friends and

even my mother and other people, they would tell me hey,

stay away from him.  He's -- he's bad news.  Stay away from

him.  He's not -- he's not the kind of guy that you want to

be around or continue to be around, but I'm not seeing him

as everyone is seeing him.  I'm seeing him as basically like

dad or daddy.  That's how I'm seeing this man, so once he

asked me to -- once he asked me to help him get back on his

1    feet, I just asked well, what do you need me to do?

2         So once he laid -- laid out the plan, he was going

3    to get with -- he was going to get with basically Will

4    Dorsey.  He basically -- he paired me and Dorsey up which

5    Will Dorsey didn't -- he didn't -- he despised me and I

6    didn't care for him much, so he still basically paired us up

7    and we were both to get whatever he gave us and we were to

8    get rid of it and give him the monetary benefits, but it

9    didn't pan out that way, so once all of this happened, the

10   -- the thing with -- that I'm here for today, the thing with

11   Daniel come along and it was at that point, I was basically

12   fed up.

13        I didn't want no parts of it, but I still indulged

14   in it anyway because it was hard to tell this man no, and

15   from -- from my knowledge, growing up and knowing -- knowing

16   the background and -- and the nature of this man, he's not

17   the kind of person that you want to tell no to or be in his

18   bad graces.  You will always want to remain in his good

19   graces, so once the Daniel -- the Daniel conspiracy comes

20   along, my email was given to Daniel by Mr. Womack -- my

21   email address, so then when I received the email from Daniel

22   asking was I -- was I Rob and I told him, no and he asked

23   where was Rob?  So this was when I had emailed -- no, I had

24   texted -- no, I called -- I mean I called Mr. Womack and I

25   told him that a guy by the name of Daniel was looking for

1    him.

2          So he asked me did I want to -- was I going to

3    talk to him and I told him for what?  No, there was

4    basically no reason for me to talk to him, so then he --

5    then he told me that -- well, just -- he texted me a number

6    and he told me well, just give him this number.

7          THE COURT:  But at some point, you knew it was

8    about drugs?

9          MR. NATHANIEL COLES:  Yes, absolutely.  So once he

10   -- once he texted me the number, which turned out to be

11   Paris Church's number, I then kept texting him -- I kept

12   emailing Daniel Womack's number, so then once I was -- kept

13   emailing him Womack's number as you will hear probably in

14   the trial transcript that he was saying that I kept emailing

15   -- I kept sending him his number which I did that on purpose

16   because I didn't actually want any part of it, so once they

17   got that figured -- that part figured out that I kept

18   sending him his number, Womack called me and basically, he

19   didn't really holler at me, but he kind of chastised me

20   saying what are you doing?  Why -- why don't -- why you keep

21   giving him my number?  I sent you this number to give to

22   him, so that's when I initiated and gave him Paris Church's

23   number.

24         THE COURT:  But you were selling on your own too

25   because there was a time you wanted to make the delivery

1    outside the neighborhood of Rose and Upland and you were

2    concerned about your safety and you wanted Mr. Womack to go

3    with you because he was carrying a gun.

4         MR. NATHANIEL COLES:  No, that was Will Dorsey.

5    That was the Five sixteen -- that was the Five sixteen case.

6    Right now, I'm talking about the Four ninety-six.

7         THE COURT:  Right, but I'm talking about with

8    respect to the dealing that was going on, you had your own

9    dealing that you were doing.  Right?

10        MR. NATHANIEL COLES:  Yes, on -- yes.  So back to

11   the Four ninety-six case, once -- once this happened, I was

12   just told that -- once I told Mr. Womack that I didn't want

13   anything to do with going back and forth with this guy, he

14   told me all I had to do was just tell him to call Paris

15   Church.  That was basically what I was doing.  I'm not

16   saying that was right in any kind of way.  I'm -- at the

17   time, I definitely knew it was wrong.  I one hundred percent

18   wholeheartedly knew it was wrong, but my way of thinking at

19   the time was well, all you're -- all you are doing is

20   telling somebody to call somebody else.

21        Yes, Your Honor, I knew it was -- I knew it was a

22   drug deal, a hundred percent knew it was a drug deal, but

23   I'm figuring well, I don't have no parts of it.  I'm not --

24   I'm not going to participate in the actual deal.  I'm not

25   going to contribute any monetary value or anything to the

1    deal.  I'm not going to get any breakdown of anything if

2    anything goes down, so basically, I didn't have a stake in

3    the outcome or anything of the deal, but I'm still

4    wholeheartedly guilty of the conspiracy because I joined it

5    and I --.

6           THE COURT:  Well, on the wire, aren't you talking

7    about our three hundred dollars?

8           MR. NATHANIEL COLES:  Excuse me?

9           THE COURT:  On the wire, aren't you talking about

10   our three hundred dollars which would suggest you had some

11   money in the pot?

12          MR. NATHANIEL COLES:  No, I never said anything

13   about three hundred dollars.  I never knew that Paris Church

14   sent him three hundred dollars.  I never knew that -- I

15   never knew anything of the actual negotiations.  I never

16   even -- I -- I never even was told about him sending him

17   three hundred dollars.  I found out about him -- I found out

18   about Paris Church sending him three hundred dollars when --

19   the day -- on September 26, 2014 when we were indicted for

20   this and I read my indictment, that's when I found out that

21   money was sent to him.

22          THE COURT:  Where's the future going, Mr. Coles?

23   Where do you see yourself when you're released from prison?

24          MR. NATHANIEL COLES:  When I'm released from,

25   excuse me, when I'm released from prison, hopefully it just

won't be too late for me. I see myself working. I see
myself going back to cutting hair and going to school for
culinary arts because I most definitely want to be a cook.
That's my passion. That's what I love to do. I love to
cook. I love to cook for my family. I love to cook for my
friends. That's where I see myself cooking and take --
being a great father to my daughter and being there for my
mother and my sisters and my nieces and my nephew.

THE COURT: Is there anything else you want me to
consider?

MR. NATHANIEL COLES: Just every -- everything in
general that I'm very, very, extremely sorry for what I've
done. I'm not -- I'm not saying that I'm not guilty of this
conspiracy. The only thing that I -- the only thing I ever
did, and I am doing is contesting the drug amount of
eighteen kilograms. That's the only thing.

THE COURT: All right.

MR. NATHANIEL COLES: And also -- I'm sorry. You
were going to speak?

THE COURT: No, go ahead.

MR. NATHANIEL COLES: And also, I didn't go -- I
didn't go to trial on behalf of just trying to be snobbish
or anything. I understand that you -- you are aware that I
have been through three attorneys.

THE COURT: And -- and you have the right to go to

1  trial, sir, and that --

2          MR. NATHANIEL COLES:  Yes.

3          THE COURT:  -- that's -- that's not a problem.

4          MR. NATHANIEL COLES:  Yes, but at the beginning --

5  at the beginning of trial, my attorney at the time, Daniel

6  McGarrigle -- I asked him could we -- could we venture down

7  the avenue of pursuing a plea deal?  He told me that there's

8  no way -- there's no way that we need to pursue a plea deal

9  because it's -- there's -- there's no evidence on you.  He

10 told me -- he told me that I'm -- I'm going to beat this.

11 I'm going to beat this.  He said the only thing we'll have

12 to worry about is talking about the five -- the five sixteen

13 case.

14         MS. CHAVAR:  Hang on a second.  Your Honor, if I

15 may, he wants to appeal that conviction and I'd rather him

16 not make any statements.

17         THE COURT:  Yeah, I was going to say I'm not sure

18 this is --

19         MS. CHAVAR:  Thank you.

20         THE COURT:  -- the appropriate time or place --

21         MS. CHAVAR:  Yes.

22         THE COURT:  -- to make --

23         MS. CHAVAR:  Uh-huh.

24         THE COURT:  -- to have this discussion.  Anything

25 further, Mr. Coles?

1    MR. NATHANIEL COLES: Yes, that's basically it,

2    Your Honor. I apologize for -- for me being in front of you

3    today and I hope and pray that you will be able to have some

4    leniency towards me in the sentence that you will hand down

5    to me.

6         THE COURT: All right. Mr. Eckert, is there

7    anything else the Government would like to put on the

8    record?

9         MR. ECKERT: I could go on, but I don't think it's

10   appropriate. I'm happy to --.

11        THE COURT: No, I -- I'd like to hear whatever the

12   Government has to say, so if -- if there's anything specific

13   because we've had a lot of facts.

14        MR. ECKERT: Just -- just on acceptance, even

15   today it's I wasn't really in the deal. I -- my

16   recollection of the closing argument was, and this is what's

17   in the Rule Twenty-nine motion is he was vaguely aware of

18   what Mr. Church was doing. That's a factual denial of an

19   intent to be in a conspiracy. An acceptance of

20   responsibility is a sacrosanct principle of the federal

21   system that if a person comes in here and pleads guilty,

22   they deserve a break as well they should.

23        THE COURT: Right.

24        MR. ECKERT: Now he has every right to go trial

25   and I take no issue with that, but for him to come in here

1   and say I deserve acceptance, I think it's just absolutely

2   not belied by this record whatsoever.  Thank you.

3          THE COURT:  I understand.  With respect to the --

4   the Defense argument that ones acceptance of responsibility,

5   I'm not persuaded that an adjustment in the offense level

6   would be appropriate with the record before given the

7   position at trial and so as to that request for either a

8   downward departure or a downward variance, the request is --

9   that -- that argument is -- is rejected.

10         I do think that it's important under controlling

11  Third Circuit precedent and under the guidelines for me to

12  give very careful consideration to the arguments under Three

13  B one point two with respect to this defendant's role in the

14  offense.  I am not persuaded that it was a minimal role, but

15  I am persuaded that the two-level downward adjustment is

16  appropriate for a minor role in the conspiracy and -- and I

17  base that on a close comparison of Mr. Coles' involvement

18  with respect to the other defendants in the case

19  particularly as to Mr. Womack and Mr. Church from the record

20  before me, and I understand the Government's position that

21  there is to some degree just a matter of how the evidence

22  unravels and what is or is not caught on the wiretap.

23         But nonetheless, given the importance of that

24  consideration for offense level, unless the evidence is

25  there that would suggest that Mr. Coles is involved to the

1   same degree as the other defendants, an appropriate

2   adjustment downward is indicated and in that regard, it's

3   not just the -- the frequency with which the other

4   defendants are involved in the discussions, but the specific

5   content of the discussion between them was far more specific

6   as to the details of the conspiracy and I also place weight

7   on the fact that in addition to what the Third Circuit has

8   said, I agree with Ms. Chavar that it is significant from

9   the standpoint of the Sentencing Commission that they

10  focused on this as a guideline in need of amendment and in

11  need of amendment because it was not being utilized

12  appropriately as it should be, and so I -- I accept the

13  argument from the Defense on that and we'll make a two-level

14  downward adjustment.

15          I think there's sufficient evidence for that by

16  way of departure, but it would also qualify for a variance

17  on the record in the case and by making that downward

18  adjustment, the -- the guideline range changes, if we keep

19  the criminal history category the same which I will comment

20  on in a minute, to two hundred and ninety-two to three

21  hundred and sixty-five months.  Let me discuss somewhat then

22  Mr. Coles' criminal history.  I think the Defense concedes

23  that the predicate offenses here do qualify as -- as career

24  offender offenses and in finding that enhancement applicable

25  here, we agree that there's not a Nine fifty-one information

1     required.

2           But in finding it applicable, I'll look at the

3     totality of the record in the case and in particular in that

4     regard, the two-prior possession of a firearm offenses on

5     the part of the defendant which the Court takes very

6     seriously. The -- the question then becomes are there any

7     other appropriate adjustments to be made and I do think that

8     there is a strong argument made for a further variance

9     downward with respect to the drug quantity as follows:

10     While I'm persuaded that the record is clear that Mr. Church

11     and Mr. Womack had specific expectations of -- of delivery

12     of something in the range of eighteen kilograms and even

13     higher numbers that were discussed at certain points, the

14     record is not clear to me that Mr. Coles had a similar

15     degree of awareness as to the scope of the conspiracy and

16     taking into account the Collata, I think this also builds

17     off of the fact that I found that the downward adjustment

18     for minor role was appropriate, I am not persuaded that he

19     should be charged with the same level of culpability with

20     respect to amount as Mr. Church and Mr. Womack.

21           I'm also in this case influenced to a certain

22     degree by the -- the history of Mr. Coles and the fact that

23     at a young and vulnerable age in his life I am persuaded

24     that Mr. Womack became a force in his life and a force for

25     ill. I'm sufficiently familiar with Mr. Womack and it's

1    clear to the Court based upon the history of this case that

2    he is an individual that has a certain charismatic quality,

3    that he has certain attributes that people view as worthy of

4    veneration.  The date of his sentencing, I heard from

5    someone from the federal detention center about the positive

6    impact that Mr. Womack had on him.

7          Mr. Coles here says that he was both a force for

8    good and a force for ill in his life and so with respect to

9    that, it's clear to me that when Mr. Coles was at a

10   formative age and stage in his life, Mr. Womack was a -- an

11   important presence and a presence for ill.  Whatever he

12   taught Mr. Coles that was positive was offset by his

13   introduction to a criminal way of life to the use of drugs

14   and I do think that on the record in this case, and my

15   familiarity with the specifics that some further downward

16   variance is appropriate essentially because of the lack --

17   not just the lack of youthful guidance, but the negative

18   influence on the part of Mr. Womack who, as I have noted, I

19   think is a person that apparently has a great deal of

20   influence in some ways and so take -- I also take into

21   account the age that Mr. Coles is at this point in his life

22   -- in his thirties and if you look at the guideline range of

23   thirty years to life, I think it's an inappropriate range as

24   well taking all of these factors into account.

25          So having reduced the offense level to thirty-five

and given the guideline range of two hundred and ninety-two months, I reject Ms. Chavar's suggestion that a sentence below fifteen years is an appropriate sentence, but with the further downward adjustment, it's the sentence of the Court that Mr. Coles serve a total of two hundred and forty months. With respect to Fourteen four ninety-six and the agreed upon recommended sentence of ten years on fourteen five one six which is a mandatory minimum of ten years, so in a sense -- to say it in plain English, Mr. Coles, it's a twenty-year sentence. I believe that's the appropriate sentence here taking into account all of the factors set forth above. I think it is sufficient to underscore the seriousness of the offense here and promote respect for law in the overall construct of Mr. Coles' comparatively limited involvement with respect the conspiracy to import the drugs from Mexico with Daniel.

With respect to the need for punishment and individual deterrence as to punishment, given Mr. Coles' youth and the fact that he's going to be incarcerated during the many -- many of the prime years of his life, I believe for that reason, it's a sufficient sentence. With respect to specific deterrents, I do attach significance as Ms. Chavar argues to his fine record in the federal detention center and you're arguing to a judge that's taught in the Philadelphia prisons, I'm aware of the realities of prison

1  life and trouble finds people when they don't look for it

2  and the fact that no trouble has found Mr. Coles is some

3  testament to the fact that he's making some effort to

4  rehabilitate himself.  I've previously expressed that I'm

5  not sure that sentences of this kind have a general

6  deterrent, but to the extent that they do, I think a twenty-

7  year sentence is a sufficient message to others who might be

8  tempted to follow in the footsteps of a Donald Womack.

9        With respect to Mr. Coles' need for vocational

10  training, I'm encouraged by the fact that he previously had

11  acquired wood working skills and also has some culinary

12  talents but believe that he could also benefit from further

13  vocational training while incarcerated.  I will make a

14  recommendation to the Bureau of Prisons that he be afforded

15  treatment for basically alcohol addiction more than drug

16  addiction.  Am I right, Ms. Chavar?

17        MS. CHAVAR:  Yes, Your Honor.

18        THE COURT:  For -- for alcohol --

19        MS. CHAVAR:  If he --.

20        THE COURT:  -- addiction to the extent that that's

21  available and a recommendation that he be placed in a

22  facility that's close to Philadelphia as possible so that he

23  can maintain contact with his daughter.  With respect to

24  supervised release, with respect to four sixteen, the -- I'm

25  trying to find the required sentence is I think ten years of

1    supervised release.  Correct?

2              OFFICER BOYER:  That's correct, Your Honor.

3              MR. ECKERT:  That's my understanding.

4              THE COURT:  And so the -- the maximum sentence for

5    supervised release will be ten years with an eight year --

6    followed by eight years and three years for the other

7    counts, but all to run concurrently.  With respect to

8    supervised release, Mr. Coles' as I'm sure you're aware, it

9    is greatly important that you not commit any other offense

10   against federal, state or local law.  All right.?  Because

11   if you do so, that will be a violation and you will be back

12   in front of me and I trust you understand that today, I've

13   given you a meaningful reduction in sentence from what the

14   guidelines would call for and from what the Government has

15   asked me to impose, so if you were to be back in front of me

16   on a violation of supervised release, it will be with my

17   knowledge that you had already been given that accommodation

18   at the time of sentencing.

19             While on supervised release, as I'm sure you

20   understand, you cannot possess a firearm nor could you as a

21   convicted felon or any other dangerous device, cannot use or

22   possess any controlled substance, and you shall submit to a

23   drug test upon release from prison and then periodically at

24   such points as the probation office deems appropriate and

25   drug test there to include alcohol breathalyzer evaluation

1    if that's deemed necessary. Mr. Coles shall participate in

2    a program to combat alcohol addiction and to the extent that

3    probation deems it necessary, any program necessary for

4    improving his literacy, education or employment skills.

5         When someone is on supervised release, Mr. Coles,

6    they must provide full financial disclosure to the probation

7    office which will include tax returns and you're not able to

8    borrow money or take a credit card without the consent of

9    probation. I see no purpose here that would be served by

10    the imposition of a fine, but it is my requirement to impose

11    a mandatory special assessment of one hundred dollars per

12    count and I believe there's a total of eight counts, so the

13    special assessment would be eight hundred dollars. Mr.

14    Eckert, from the standpoint of the Government, are there any

15    other conditions of supervised release you think the Court

16    should address?

17         MR. ECKERT: I don't believe so, Your Honor.

18    Thank you.

19         THE COURT: All right. And Ms. Chavar, from the

20    standpoint of the defendant?

21         MS. CHAVAR: No, Your Honor.

22         THE COURT: All right. Mr. Coles, good luck to

23    you, sir.

24         MS. CHAVAR: Your Honor?

25         MR. ECKERT: Your Honor, can you just announce the

forfeiture part of the sentence? I didn't mean to interrupt you. I apologize.

THE COURT: Thank you. The order of forfeiture signed today without objection will be incorporated into the terms of the sentence --

MR. ECKERT: Thank you.

THE COURT: -- and then of course, I would ask Ms. Chavar to give the defendant his rights of appeal.

MS. CHAVAR: Okay. You have the right to appeal this sentence. If you do want to appeal, you have to file a notice with the Court in fourteen days. You let me know that and I'll file that appeal for you. If you can't afford a lawyer, then you will have a lawyer appointed to represent you. I believe my appointment would continue. Okay?

MR. NATHANIEL COLES: Okay.

MS. CHAVAR: All right. Thank you, Your Honor.

THE COURT: Counsel, anything further?

MS. CHAVAR: Just -- just a minor thing, with respect to drug treatment, I've been told recently that unless it says that you recommend the residential drug treatment program, he doesn't go to a facility that has a treatment program and it's just like the classes that he's already had at the F.D.C.

THE COURT: I'll -- I'll address that with probation, Ms. Chavar --

1          MS. CHAVAR:  Thank you.

2          THE COURT:  -- and whatever is the --

3          MS. CHAVAR:  Okay.

4          THE COURT:  -- appropriate recommendation is what

5     we'll make.

6          MS. CHAVAR:  And -- and while I have Mr. Eckert

7     here, one of the things that Ms. Phillips I think didn't

8     have the time to do before she left was lift separations

9     which were supposed to be lifted --

10          MR. ECKERT:  Okay.

11          MS. CHAVAR:  -- and what it means is that it's a

12    list of twenty-six people he's still separated from.

13          MR. ECKERT:  Okay.

14          MS. CHAVAR:  He won't go anywhere near here.

15    He'll be like halfway across the country with these still in

16    place.

17          MR. ECKERT:  We -- if I may, before he's

18    designated, the B.O.P. will reach out to me about the --

19    whether the separations will remain in place.  I'll talk to

20    Ms. Chavar about -- I certainly will concur that based on

21    the current status of the case, it's highly unlikely that he

22    needs to remain separated from anyone who did not cooperate,

23    but we can certainly --

24          THE COURT:  Right.

25          MR. ECKERT:  -- address that.

1          THE COURT:  Yeah, Mr. Coles was not a cooperator.

2    I would not assume he's in jeopardy and so --

3          MR. ECKERT:  Right.

4          THE COURT:  -- yeah.

5          MR. ECKERT:  Exactly.

6          THE COURT:  All right.  I'll -- I'll rely on

7    counsel to work that out in an appropriate way.

8          MR. ECKERT:  Very well.

9          MS. CHAVAR:  Thank you, Your Honor.

10          THE COURT:  Thank you, counselors.

11          MR. ECKERT:  Thank you.

12          THE COURT:  We're adjourned.

13

14

15

16

17

18

19

20

21

22

23

24

25

1   I, Judith Spriggs, court approved transcriber, certify that the
    foregoing is a correct transcription from the official electronic
2   sound recording of the proceeding in the above-entitled matter

3

4

5

6   _____/

7   Judith Spriggs
    Associated Reporters Int'l., Inc.    22 July 2019

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

800.523.7887          6-21-2019, WORD INDEX, Coles case          Associated Reporters Int'l., Inc.

Page 1

## A

**a.m** 1:6
**ability** 28:24
**able** 47:12 48:1,5,21 52:7 59:25
  68:3 76:7
**above-entitled** 80:2
**absolutely** 15:14 16:3 21:21
  22:9 63:9 69:1
**academics** 26:18
**accept** 6:23 15:7 43:25 70:12
**acceptance** 5:6 13:4,12,17,21,24
  14:14 38:23 68:14,19 69:1,4
**accommodation** 75:17
**accomplished** 10:19
**account** 71:16 72:21,24 73:11
**acknowledge** 21:3
**acquired** 74:11
**act** 20:22
**acting** 36:12
**action** 42:6
**actions** 54:3,8
**activity** 32:23,25
**acts** 35:20,21 36:6 52:23
**actual** 64:24 65:15
**actuality** 58:3
**adamant** 42:19
**addict** 25:2,16
**addicted** 56:13
**addiction** 74:15,16,20 76:2
**addition** 70:7
**address** 4:21 6:14 13:11 16:4
  23:13 62:21 76:16 77:24 78:25
**addressed** 38:25
**addressing** 40:10
**adjourned** 79:12
**adjustment** 11:8 69:5,15 70:2,14
  70:18 71:17 73:4
**adjustments** 71:7
**admit** 54:10
**admits** 35:25
**admittedly** 44:4
**adopt** 22:18
**adopted** 32:7
**advance** 12:2
**advanced** 44:11
**advancing** 44:14
**advice** 7:19 8:12 29:13
**afford** 77:12
**afforded** 21:18 74:14

**afternoon** 55:4
**age** 22:6,6 23:20 25:7 41:11
  54:23 55:16 71:23 72:10,21
**agents** 20:2
**agree** 22:19 23:5 36:23 37:15
  41:2 70:8,25
**agreed** 37:19 73:7
**agreements** 33:18
**ahead** 31:22 53:25 66:20
**ahold** 34:16 36:7
**air** 57:9
**alcohol** 25:25,25 74:15,18 75:25
  76:2
**alcoholic** 26:1
**all-nighter** 55:24
**Allegheny** 60:20
**allow** 52:18 57:14,16
**allowed** 57:13
**amazing** 48:6
**ambiguity** 23:12
**amendment** 31:22 32:5,7,11,21
  70:10,11
**America** 1:3,13 3:2
**amount** 14:22 17:10 19:23 20:5
  20:10,11 21:21 66:15 71:20
**anguish** 54:6
**announce** 76:25
**annoyed** 31:3
**answer** 57:8
**anybody** 37:11 45:24 47:3 52:16
  52:17
**anymore** 25:20 59:10
**anyway** 62:14
**apart** 54:20
**apologize** 28:23 38:24 47:12
  54:2,4 68:2 77:2
**apparently** 26:8 72:19
**appeal** 67:15 77:8,9,10,12
**appear** 16:20
**APPEARANCES** 1:10
**appears** 51:3
**appellate** 33:19
**applicable** 70:24 71:2
**application** 44:3 49:13
**applied** 32:15,15 37:14
**applies** 12:18
**apply** 11:8,15 29:24,25
**appointed** 77:13
**appointment** 77:14
**appointments** 43:15 46:19

800.523.7887          6-21-2019, WORD INDEX, Coles case          Associated Reporters Int'l., Inc.

Page 2

appreciate 10:5 21:4 53:18
Apprendi 20:24
approach 4:25 23:15
approaches 21:7
appropriate 8:17 12:22 14:15
  67:20 68:10 69:6,16 70:1 71:7
  71:18 72:16 73:3,10 75:24
  78:4 79:7
appropriately 70:12
arbitrary 41:1
aren't 16:15 22:1 65:6,9
argue 29:20
argues 73:23
arguing 73:24
argument 5:6 6:5,11,14 11:5,10
  12:13,25 13:6,13 14:17 15:5,9
  15:11 16:1 19:22 22:19,25
  29:18,21 44:7,11 68:16 69:4,9
  70:13 71:8
arguments 19:24 23:23 69:12
arisen 20:17
Arnold 8:7
arrested 22:6
articulated 11:25
arts 66:3
ashamed 57:1
asked 7:21 15:6 60:22,23 61:25
  61:25 62:1,22 63:2 67:6 75:15
asking 8:10 52:14 53:9 62:22
assert 40:7
assertion 30:4
assessing 19:11
assessment 76:11,13
assist 43:5
assistance 3:17
Associated 1:23 80:7
Association 26:17
assume 79:2
assure 43:19
athlete 26:7
attach 39:25 73:22
attempt 58:4,8
attempted 14:5,6
attempts 44:24
attended 5:7 60:8
attending 60:7
attentive 48:20
attorney 1:13 67:5
attorneys 66:24
attributed 49:14

attributes 72:3
aunt 25:5
aunts 26:19
authority 35:14,15
available 43:5 74:21
avenue 67:7
aware 25:10 32:12 40:16 66:23
  68:17 73:25 75:8
awareness 71:15

---

**B**

B 11:9 31:23 69:13
B.O.P 78:18
baby 52:2
babysitter 54:23
back 11:2 14:21 15:24 16:25
  20:19 22:15 37:7 38:15 40:18
  40:19 41:20 42:8 43:10 46:18
  57:24,24 58:13 60:13,14,25
  61:5,10,11,25 64:10,13 66:2
  75:11,15
background 13:16 21:6 39:14,17
  50:12 62:16
backing 30:2 31:18
backs 56:20
bad 25:8 48:19 56:9 61:20 62:18
bags 43:9 56:7
bar 4:21 5:24 13:19,20 45:1
barbering 42:20
base 33:2 37:21 38:2,6 69:17
based 14:13 15:9 20:10,11 22:8
  22:9,10 72:1 78:20
basic 33:3
basically 50:3 54:10,17,25
  55:13,21,23 56:11,14 57:10,11
  57:25 58:2,6,17,23 59:23 61:5
  61:7,23 62:3,4,6,11 63:4,18
  64:15 65:2 68:1 74:15
basis 40:11
basketball 55:16 56:16 57:3
bears 7:14,20 8:5
beat 67:10,11
beautiful 48:6
beginning 16:16 18:1,1 24:4
  52:6 67:4,5
Begins 5:1
behalf 3:8,11 9:25 46:4 66:22
behavior 25:8 50:5
behest 34:14
belabor 21:1,1

800.523.7887          6-21-2019, WORD INDEX, Coles case          Associated Reporters Int'l., Inc.

Page 3

**belied** 69:2
**believe** 7:6,7,9 29:3 53:2,2 56:9 57:23 73:10,20 74:12 76:12,17 77:14
**bench** 43:24
**beneath** 35:12
**beneficiary** 40:18
**benefit** 20:16,22 36:20,21 37:11 48:15 74:12
**benefits** 62:8
**best** 47:18,18,18 56:22 59:20 61:18
**better** 46:12 48:20
**beyond** 36:19 37:22
**big** 26:25 54:19
**biggest** 54:17
**bills** 56:6
**bit** 13:16 32:5 42:18
**blossom** 48:6
**Blue/Gold** 26:15
**Bob** 3:8
**book** 38:16
**borne** 11:23
**borrow** 76:8
**bother** 35:7
**bottom** 49:16
**boy** 26:12 34:15,18 52:2
**Boyer** 3:16,18 50:7,9 75:2
**boys** 26:11
**break** 19:15 21:18 30:12 49:8 68:22
**breakdown** 65:1
**breath** 57:9
**breathalyzer** 75:25
**brief** 9:13
**bring** 23:18 47:2 50:20
**bringing** 27:4
**brings** 10:13
**brought** 54:6
**build** 58:14
**builds** 71:16
**bull** 18:18,19,21,22,23,23 19:5 34:18,19 35:5,7 37:8 43:1 49:4
**bulls** 35:16
**bunch** 56:4
**Bureau** 74:14
**business** 29:13 59:18
**busy** 48:18
**butt** 52:18,20

**buy** 36:23

## C

**C** 15:7,21 29:11
**cafeteria** 60:21
**calculated** 22:19,20 49:9
**calculation** 23:5
**calculations** 20:11
**call** 4:4 17:17 18:3,4,5 19:6,9 34:23 48:16 64:14,20 75:14
**called** 18:3 62:24,24 63:18
**calling** 16:24 18:15 31:20 55:10
**calls** 16:14,24 18:9,13,21 19:13 19:13 34:20,21,21 36:3
**Camilla** 47:10 48:11
**can't** 6:24 37:9 42:2 50:19 52:21,21,22 59:10 77:12
**capable** 28:14
**car** 24:15 29:5
**card** 76:8
**care** 62:6
**cared** 57:10
**career** 11:15,22 12:4,17 38:14 38:20 39:5,10 40:6,8,10 49:13 49:17,19 70:23
**careful** 69:12
**caring** 47:17 48:20 57:10
**carpentry** 59:16
**carrying** 43:9 64:3
**cars** 43:2
**case** 1:3 5:8 9:19,22 10:10,13 10:25 13:9,21,23 15:4,6 19:11 20:15,17 22:7,9 33:21 64:5,11 67:13 69:18 70:17 71:3,21 72:1,14 78:21
**cases** 13:18
**Castle** 54:24
**category** 22:22 38:21 39:2 70:19
**caught** 23:20 53:9 69:22
**caused** 54:3
**center** 41:25 50:7 72:5 73:24
**certain** 6:20 41:11 46:25 57:13 71:13,21 72:2,3
**certainly** 3:7 13:10,19,23 14:14 14:20 15:4 16:8,9,19 18:24,25 19:17 20:4,8,14,17 21:17 33:1 37:23 41:13 48:14 50:2,4 78:20,23
**challenge** 43:8
**chance** 53:23

800.523.7887          6-21-2019, WORD INDEX, Coles case          Associated Reporters Int'l., Inc.

Page 4

change 23:4
changes 70:18
characterization 34:18
characterized 29:12
charge 9:2 27:18 28:20
charged 21:10 71:19
charges 24:6 27:19
charging 10:15
charismatic 72:2
chastised 63:19
Chavar 1:17 3:10,11,12 4:2,6,9
 4:11,23 5:5,12,20 6:3,7,9,12
 7:6,8,10,13,16 8:4,18,20,23
 9:4,7,9,11,12,16,17 10:23,24
 11:4,12,25 12:12,16,19 13:3,7
 15:14,18,21 16:3,6 22:20,24
 23:1,4,7,12,15,17,21 24:1,3
 24:18,20,23 38:18 39:16,19,22
 40:5,23 41:3,12,15 43:18,21
 43:25 44:13,17,19 45:2,6,8,10
 45:13,14,19,22,24 48:14 50:11
 50:12,14,23 51:5,7,9,12 53:21
 67:14,19,21,23 70:8 73:23
 74:16,17,19 76:19,21,24 77:8
 77:9,16,18,25 78:1,3,6,11,14
 78:20 79:9
Chavar's 15:11 73:2
cheer 27:7
cheering 27:4
Chester 18:12 54:15
CHESTNUT 1:14
child 21:9 51:25 52:1,22 60:5
children 25:12 26:10 46:5,12
 57:17
chose 53:1,1
CHRISTOPHER 3:18
Church 14:11 16:10,11,12,25
 17:1,7,20,21 18:2,5,7,13,17
 18:24 19:2,4,7,9,12,14 30:22
 31:3,6,16 33:11 34:1,19 35:10
 36:3 37:6 64:15 65:13,18
 68:18 69:19 71:10,20
Church's 14:6 18:20 34:14 63:11
 63:22
circuit 32:1 69:11 70:7
clarify 8:20
class 60:11
classes 50:6 77:22
clause 5:6
clean 24:9

clear 7:23 23:11 27:14 38:2
 44:2,20 71:10,14 72:1,9
clearly 16:19 17:2,6 30:13 31:2
 35:11 40:6,7 44:6
client 42:17 45:12,19
clients 8:8 35:3
close 13:15 42:22 49:19 69:17
 74:22
closer 53:24
closing 44:10 68:16
clothes 24:9,9 56:20
cocaine 25:6,15 36:24
Coles 1:5,17 3:2,11,13,14,20,22
 4:3,7,11,13,16,19 7:4 9:12,13
 9:21,25 10:4,8,11 13:16 14:5
 14:10 16:11,11,13,15,15,21,25
 17:6,20,22 18:4,8,13,18,24
 19:5,8,13,14,17 21:6 24:4,19
 24:22 30:17 31:8 32:22 33:16
 34:21 35:9,19 37:24 41:10
 44:21 45:25 46:1,2,3 47:9,12
 48:9,13 49:1,7 50:21 51:3,14
 51:15 53:8,15,18,19,20,22
 54:1,10 60:14,17 63:9 64:4,10
 65:8,12,22,24 66:11,18,21
 67:2,4,25 68:1 69:17,25 70:22
 71:14,22 72:7,9,12,21 73:5,9
 73:14,18 74:2,9 75:8 76:1,5
 76:22 77:15 79:1
Collata 38:1 49:15 71:16
combat 76:2
combined 49:20
come 24:8 26:20 34:20,21 37:6
 38:13 41:1 51:19 57:6 59:17
 62:11 68:25
comes 22:4 26:25 49:10 62:19
 68:21
comfortable 23:14
comforts 25:1
coming 5:8 18:7 27:4
comment 70:19
comments 50:13
commission 32:14 35:20 36:4
 70:9
commit 75:9
committed 54:13
communicate 17:22
communicated 16:21
communication 8:24
communications 17:2

800.523.7887          6-21-2019, WORD INDEX, Coles case          Associated Reporters Int'l., Inc.

Page 5

community 54:6
comparatively 73:14
comparison 69:17
competition 26:14
complicated 34:5,7
compliment 55:13
concealed 21:23
concede 18:25
conceded 13:24
concedes 70:22
concept 33:3
concerned 64:2
concerning 6:1 40:4,5
conclude 20:4 21:5
concludes 19:22
concur 11:21 22:23 78:20
concurrent 15:7 49:25
concurrently 75:7
conditions 46:16 76:15
conduct 22:1,10 29:10,11,20,24
  30:1,12 34:8 41:6 44:3 50:3
confer 51:8
conferences 60:7
conform 21:14
consent 76:8
consider 12:6,10 40:13 66:10
considerable 43:10
consideration 45:4 48:8 49:12
  69:12,24
considered 41:14
conspiracy 14:12,23 15:12 17:3
  18:2 19:18 22:11 29:21,22
  30:3 31:19,19 32:18 35:25
  38:3 44:15 52:8,8 62:19 65:4
  66:14 68:19 69:16 70:6 71:15
  73:15
conspired 53:12
construct 73:14
contact 21:19 74:23
contacts 36:2
contemplated 20:7
content 70:5
contents 56:7
contest 44:2,21
contesting 15:19 66:15
context 22:14 23:10
continue 42:20 59:6 60:2,2
  61:22 77:14
contract 44:6
contracting 59:18

contrary 42:19
contribute 64:25
control 42:4 50:17
controlled 75:22
controlling 69:10
conversation 33:11
convicted 21:10 75:21
conviction 67:15
cook 66:3,5,5,5
cooking 66:6
cookouts 47:20
cooperate 78:22
cooperation 6:20,21
cooperator 79:1
copies 3:24
cops 53:9
corner 61:18
correct 3:25 10:17 15:13 16:3
  75:1,2 80:1
corroborates 29:16
corrupting 21:9 27:18
couldn't 34:14 46:12
counsel 3:5,24 7:5,18 8:11,12
  11:2 12:23 23:16 24:2 33:19
  77:17 79:7
Counselor 4:20
counselors 79:10
count 76:12
counted 12:15
country 78:15
counts 75:7 76:12
county 21:17,21
couple 6:25 20:13 21:5 37:17
  49:3
course 5:8 9:11 16:10 17:3,4
  22:18 28:14 29:14 77:7
court 1:10,22 3:1,9,12,15,15,20
  3:21,23 4:3,8,14,17,20,25 5:3
  5:10,15,18,21,23 6:4,8,10,13
  7:2,11,14,17 8:3,7,14 9:1,6,8
  9:11,13,17,19 10:1,5,9,12,13
  10:19,22,25 11:1,13 12:10,13
  12:17,21 13:5,8,11,14 14:24
  15:7,8,10,15,17,22,24 16:4,7
  17:10,12,15,18,23 19:20,24
  20:4,8,25 21:2 22:11,13,18,25
  23:2,8,10,13,16,19,24 24:2,17
  24:19,21 38:17 39:14,17,21,23
  40:17 41:2,9,13 43:16,19,23
  44:12,14,18,25 45:3,7,9,13,18

800.523.7887     6-21-2019, WORD INDEX, Coles case     Associated Reporters Int'l., Inc.

Page 6

45:21,23  46:2  47:8  48:12
49:15  50:10,12,18,22,24  51:3
51:6,8,11,13  53:6,14,17,19,22
60:13,16  63:7,24  64:7  65:6,9
65:22  66:9,17,20,25  67:3,17
67:20,22,24  68:6,11,23  69:3
71:5  72:1  73:4  74:18,20  75:4
76:15,19,22  77:3,7,11,17,24
78:2,4,24  79:1,4,6,10,12
**courtesy** 43:4
**courthouse** 24:5
**courtroom** 6:1  54:2
**cousin** 24:14  31:4,6
**cousins** 26:20
**covered** 32:10
**crazy** 18:14
**credit** 42:5  76:8
**crime** 44:8
**crimes** 54:13
**criminal** 3:2  22:22  27:14,16
28:21  32:23,24  38:21  39:2,12
39:12  53:11  70:19,22  72:13
**critic** 54:17
**criticism** 25:18
**Criticisms** 25:17
**culinary** 42:21  66:3  74:11
**culpability** 71:19
**culpable** 30:2,3  34:9,10
**curious** 30:21
**current** 78:21
**custody** 40:20  41:22  50:16
**cut** 45:5  59:17
**cutting** 66:2

**D**

**D-rock** 19:6
**DA-MEIR** 1:5,17
**dad** 56:25  61:24
**dad's** 56:25
**daddy** 61:24
**daily** 26:3
**dangerous** 75:21
**Daniel** 14:5  16:21  17:2,4,7,23
17:24  18:5,8,14,19,22  19:6,8
19:9  20:1,5  30:18,20,21,24
31:1,3,8,13  33:16  34:11,12,23
36:2,8  37:16,17  44:8  62:11,19
62:19,20,21,25  63:12  67:5
73:16
**Daniel's** 16:24

**dash** 3:3,3,3,4
**date** 72:4
**dates** 19:10,15
**daughter** 42:8  46:5,14  47:5,6,11
48:21  59:25  66:7  74:23
**daughter's** 60:10
**daughters** 52:4,13
**day** 30:15,16  48:11  58:18  60:20
65:19
**days** 31:14  77:11
**Daz** 19:5
**DE** 1:18
**deal** 14:5  20:7  26:25  35:20
36:20,22  37:2  44:9  49:1  64:22
64:22,24  65:1,3  67:7,8  68:15
72:19
**dealer** 60:12
**dealers** 27:7
**dealing** 31:7  64:8,9
**dealt** 33:16  52:24
**debate** 14:17,17
**deceased** 54:21
**decided** 9:2  47:15
**deciding** 12:17
**decipher** 32:24  44:5,20
**decision** 35:14,15,18  38:8
**decisions** 38:9,10  52:15
**deduction** 38:23
**deemed** 76:1
**deems** 75:24  76:3
**deeply** 14:9  40:11
**defendant** 1:5,16  6:19  8:10
13:20,22  17:4  18:13,22  19:8
20:16  40:24  71:5  76:20  77:8
**defendant's** 14:1  32:3  69:13
**defendants** 24:5  69:18  70:1,4
**defense** 9:24  14:11,13,18  18:16
19:23  44:3,6  45:5  69:4  70:13
70:22
**defense's** 14:22
**defer** 11:10
**definite** 37:20
**definitely** 45:19  56:9  64:17
66:3
**definition** 30:3
**degree** 32:22,25  34:1  36:19
69:21  70:1  71:15,22
**Delaware** 26:15,17,21  54:25
**delivery** 63:25  71:11
**demonstrated** 28:24,25  50:5

800.523.7887          6-21-2019, WORD INDEX, Coles case          Associated Reporters Int'l., Inc.

Page 7

**demonstrates** 29:14
**denial** 14:25 68:18
**denied** 6:21
**denying** 14:11
**departure** 14:14 15:1 69:8 70:16
**desensitized** 25:7
**deserve** 68:22 69:1
**deserves** 21:21
**deserving** 30:4
**designated** 42:22 78:18
**designation** 35:1,4,13
**despised** 62:5
**detail** 6:11
**details** 70:6
**detention** 41:25 50:6 72:5 73:23
**determine** 32:2
**determining** 8:15
**deterrence** 50:5 73:18
**deterrent** 74:6
**deterrents** 50:4 73:22
**device** 75:21
**Diaz** 18:2
**didn't** 24:7 25:3,19 31:24 33:22
  34:3,24 35:18 36:9,9,9,10,13
  36:19 40:6,6 41:4 44:21,21
  49:1 51:23 52:15,16,24 53:7
  55:12 56:1,8,9 59:9,24 60:1
  61:6,13 62:5,5,6,9,13 63:16
  63:19 64:12 65:2 66:21,22
  77:1 78:7
**different** 12:8 17:1,17 40:25
  42:14
**differently** 22:21
**difficult** 13:20 25:16 42:1,3
  44:19 46:7,22
**digital** 23:20
**Dina** 1:17 3:10,10
**dina@dinachavar.com** 1:19
**dining** 56:5
**directed** 15:12
**direction** 45:11
**directions** 21:13
**Disabilities** 26:17
**disability** 46:18
**disagree** 28:12 34:17
**discern** 18:19
**discharged** 28:19,19
**disciplinary** 42:6
**disclosure** 76:6
**discretion** 35:21 36:5,10,17

**discuss** 12:8 32:8 70:21
**discussed** 38:1 50:18 71:13
**discussing** 30:14 37:2
**discussion** 5:1 9:14,15 30:16
  31:24 37:2,4 38:5 39:1 67:24
  70:5
**discussions** 6:21 31:16 70:4
**disproportionate** 28:2
**dispute** 24:25 28:5 34:23 40:6
**disputing** 41:7,8
**disrespect** 24:13
**disrespectful** 43:12
**distinct** 11:22
**distribute** 27:17,22 28:6,19
  39:10 40:1 41:17
**DISTRICT** 1:1,10
**Dix** 42:22
**docket** 10:16,16
**doctor's** 43:14 46:19
**document** 4:4
**doesn't** 29:22 30:2 34:6 42:15
  42:15 48:18 57:2 77:21
**doing** 5:24 15:24 26:2 34:16
  51:16 55:15,25 58:2,10,11
  59:20 60:24 61:3,12 63:20
  64:9,15,19 66:15 68:18
**dollar** 56:6
**dollars** 30:22 65:7,10,13,14,17
  65:18 76:11,13
**don't** 12:10,13 14:19 15:10
  18:10 19:16 21:1 23:21 25:8
  25:13,14 26:10,16 29:20 33:22
  34:17,22,23 35:1,6,7,16,17
  36:22,23,24 37:1,8 38:1 40:7
  43:9 44:2 50:8 52:13 53:10
  63:20 64:23 68:9 74:1 76:17
**Donald** 27:3,8 29:2 40:15 57:7,7
  58:7 60:17 74:8
**Donna** 24:14
**door** 55:2
**doors** 43:13
**Dorsey** 29:12,13 62:4,4,5 64:4
**doubt** 45:24
**downstate** 37:18
**downward** 11:8 15:1 69:8,8,15
  70:2,14,17 71:9,17 72:15 73:4
**drafted** 32:11
**drinking** 25:23 26:3 50:16 55:25
**drive** 1:24 29:5,5 57:16,16
**driving** 43:6

800.523.7887          6-21-2019, WORD INDEX, Coles case          Associated Reporters Int'l., Inc.

Page 8

dropped 27:19
drug 19:23 21:16,25 24:5 27:7
   35:20 39:24 42:24 44:13 50:17
   60:12 64:22,22 66:15 71:9
   74:15 75:23,25 77:19,20
drugs 13:21,22,24 18:12 21:21
   27:12 29:15 31:11 33:2,10
   43:1 56:1 57:22,25 59:9,12,24
   59:24 60:15 63:8 72:13 73:15
due 42:17 56:13
dug 43:2
dumb 61:8

## E

earlier 22:15
earliest 24:12
earn 13:20 44:1
earned 32:2 36:15
easier 25:22
easily 29:9 43:9
EASTERN 1:1
easy 42:18 53:1 54:15
eat 27:9 46:20 47:19,20
eating 60:8
Eckert 1:13 3:7,8,9 4:1,24 5:2
   5:13,17,19 6:15,16 7:7,9,22
   8:5,13,19,22 10:17,18,21
   11:21 13:1,10,15 15:16,20,23
   16:5,7,8 17:14,16,19,24 19:20
   19:21 21:4 22:13,23 23:6,9
   37:15 50:25 51:1 68:6,9,14,24
   75:3 76:14,17,25 77:6 78:6,10
   78:13,17,25 79:3,5,8,11
Eckert's 28:13
education 76:4
effort 18:12 74:3
efforts 44:23
eight 11:17,23 12:6 20:14 51:24
   75:5,6 76:12,13
eighteen 20:2,7,9 21:8 28:8
   37:14,16 40:17 66:16 71:12
eighteen-year-old 19:1
eighty-eight 49:11
either 35:17 55:12 69:7
elaborate 38:2 61:8
elderly 43:6,13
electricity 24:8
electronic 80:1
elements 14:25
eleven 21:22 27:22 39:4 40:20

41:3,4 49:21
email 1:16,19 16:13 17:12 62:20
   62:21,21
emailed 19:9 34:12 62:23
emailing 63:12,13,14
emails 17:5,7 18:10
embarrassment 54:5
employer 48:22
employment 76:4
encounter 33:13
encounters 59:11
encouraged 74:10
encouraging 7:24,25
ended 58:16
Ends 9:15
enforcement 21:14 28:16 33:13
English 73:9
enhancement 11:15 12:18 32:19
   70:24
enjoy 55:21
enormous 39:8
entered 29:11
entire 17:3 40:2 54:5
entitled 7:20
equal 43:3
equation 37:20
especially 19:11 26:10,11 43:8
ESQ 1:13
essentially 19:22 72:16
establish 8:24
established 12:23 45:1
estimate 38:10
evaluate 36:15
evaluation 75:25
eventually 58:15
everybody 35:10 43:3 61:18
evidence 14:4 16:9,10 18:7 20:4
   20:9 30:14 33:17,21,22 35:17
   67:9 69:21,24 70:15
exact 56:8
exactly 32:24 44:20 79:5
exception 44:15,16
exceptions 23:1
exchange 30:18 34:12
exchanges 35:22
excited 26:19
excuse 39:16 57:7 65:8,25
exercise 35:14,15
expanded 32:7
expectations 71:11

800.523.7887      6-21-2019, WORD INDEX, Coles case     Associated Reporters Int'l., Inc.

Page 9

**experience** 8:8
**experienced** 8:9
**expressed** 74:4
**extent** 15:5 19:23 29:18 35:19
  74:6,20 76:2
**extremely** 66:12

---

## F

**F.D.C** 77:23
**facility** 74:22 77:21
**facing** 25:19
**fact** 10:5 16:17,22 17:25 29:23
  34:11 35:5 40:19 70:7 71:17
  71:22 73:19 74:2,3,10
**factor** 33:24
**factors** 31:23,25 32:6,9 33:9
  38:1 40:11,21,25 41:1 72:24
  73:11
**facts** 15:4 20:24 34:4,13 38:7
  68:13
**factual** 14:12,25 22:17 44:22
  68:18
**failed** 14:5 46:9
**fall** 48:18
**familiar** 9:19,21 20:25 26:16
  50:10 71:25
**familiarity** 10:13 72:15
**family** 6:2,3 26:12 43:12 47:20
  52:3 54:5 66:5
**fan** 54:17
**far** 30:4,12 51:20 57:15 58:18
  60:6 61:18 70:5
**father** 25:2 27:11 29:4,6 42:12
  42:13 47:14,17,23,25 48:3,20
  51:25 52:10,25 56:11,22,23
  57:12 58:3,4,8,8,10 60:3 66:7
**fathers** 51:25
**February** 18:15 19:4,6,16 30:20
**fed** 62:12
**federal** 22:7 32:13 40:20 41:25
  50:6 58:22,22 68:20 72:5
  73:23 75:10
**feel** 47:23 57:18
**feeling** 4:17 56:24
**feet** 61:1,5,10,11 62:1
**felon** 75:21
**felonies** 39:13
**felony** 21:8,16,25 27:18
**felt** 58:24 59:4,4,4
**fictitious** 44:8

**fifteen** 19:13,24 20:20,21 26:6
  27:12 37:19 39:6 40:16 49:16
  49:24 50:2,19 73:3
**fifty** 19:25
**fifty-one** 11:17,23 12:6 20:14
  70:25
**figure** 36:21 38:13 61:17
**figured** 63:17,17
**figuring** 31:14 64:23
**file** 11:17 43:23 77:10,12
**filing** 12:6
**financial** 76:6
**financially** 59:1,6,23
**find** 31:5 36:8 40:24 46:19
  74:25
**finding** 27:24 70:24 71:2
**findings** 22:17,18
**finds** 74:1
**fine** 6:8 24:10 45:10 47:8 73:23
  76:10
**finished** 52:5
**firearm** 21:25 71:4 75:20
**firearms** 39:15,18 40:4,5 59:12
**first** 6:16 11:7 13:12,16 16:14
  16:14,20 20:13,19 21:8,16,19
  21:23 22:3,17 28:22 40:18
  51:17,17,18 54:1 60:20,20
**fit** 40:8
**five** 3:4 10:16 15:6 25:5 28:1
  28:12 29:10 37:19 38:18,19,21
  39:3 40:12 42:7 52:4,13 55:16
  58:11,21 64:5,5 67:12,12 73:8
**FL** 1:18
**fleeing** 21:10
**flip** 31:22
**focus** 59:16
**focused** 70:10
**folks** 56:4
**follow** 21:13 28:24 42:2 74:8
**followed** 52:17 75:6
**followers** 30:10
**following** 28:14 41:16 51:21
  52:9
**follows** 71:9
**food** 56:19
**foot** 52:18,20
**footsteps** 74:8
**force** 71:24,24 72:7,8
**foregoing** 80:1
**foremost** 54:1

800.523.7887          6-21-2019, WORD INDEX, Coles case          Associated Reporters Int'l., Inc.

Page 10

**foreseeable** 37:24 38:4 49:14
**forfeiture** 10:23 11:1 77:1,3
**forget** 23:22
**Forgive** 8:22
**forgot** 48:24
**formal** 11:3 12:11,24
**formative** 72:10
**Fort** 42:22
**forth** 11:5,15 14:21 15:25 46:18
    64:13 73:12
**forty** 51:15 73:5
**forty-seven** 27:23
**forward** 42:8 50:15
**found** 17:10 37:19 54:13 65:17
    65:17,20 71:17 74:2
**four** 3:3 10:16 15:9,12 16:1
    29:19 30:11 31:23 35:12 37:8
    38:23 58:12 64:6,11 73:6
    74:24
**fourteen** 3:3,3 10:16,16 26:6
    49:21 73:6,7 77:11
**frequency** 70:3
**fresh** 57:9
**Friday** 24:24 55:5,19
**friend** 56:22
**friends** 43:12 55:25 59:21 61:18
    66:6
**front** 23:21 54:3 68:2 75:12,15
**full** 14:12 18:10 76:6
**fully** 14:23 61:13
**fun** 47:22 55:13
**funny** 47:18
**further** 36:11 50:24 67:25 71:8
    72:15 73:4 74:12 77:17
**furtherance** 49:4
**future** 65:22

---
**G**
---

**gained** 59:15,15
**game** 26:15 27:8
**games** 27:4 55:22
**genderist** 26:11
**general** 46:17 52:11 54:24 66:12
    74:5
**generally** 5:1 14:7
**gentleman** 21:8 41:19 43:2
**GERALD** 1:9
**get-** 60:8
**getting** 22:2 29:12,16 33:7 37:6
    59:21

**give** 22:14 27:9,15 57:8,15 62:8
    63:6,21 69:12 77:8
**given** 6:22 8:12 39:24 49:19
    62:20 69:6,23 73:1,18 75:13
    75:17
**giving** 63:21
**go** 3:1 8:25 15:4 20:21 22:15
    24:1 25:20 26:8 31:24 36:19
    36:22 44:2 47:21,22 50:19
    53:25 55:4 60:9,10,13,14
    61:11 64:2 66:20,21,22,25
    68:9,24 77:21 78:14
**god** 47:21
**goes** 13:20 20:23 31:6 56:15
    58:1 65:2
**going** 5:6 13:5 14:9 16:23 17:10
    18:3,4 24:8 25:14,20 26:4,14
    26:20 28:3 31:2,9,22 32:8
    33:3,5 36:8,21,22 37:6,7
    38:15 44:9 45:11 46:20 47:19
    47:19 49:2,6 56:2,3 59:16,17
    59:18,19 62:2,3 63:2 64:8,13
    64:24,25 65:1,22 66:2,2,19
    67:10,11,17 73:19
**good** 3:7,10,12,12,14,18,20 10:3
    10:4 24:21,22 26:7,9 37:13
    41:21 42:9 43:7 45:2 46:1,2,3
    47:1,9 51:13,14 56:9 57:3
    62:18 72:8 76:22
**gotten** 37:11
**government** 3:8 9:24 11:17,20
    13:1,9 15:6 29:14 30:14 31:1
    33:15 34:24 45:4 50:25 51:23
    52:14,18 68:7,12 75:14 76:14
**Government's** 30:14 34:13,17
    69:20
**graces** 62:18,19
**gradual** 22:1
**graduated** 52:4
**graduation** 10:6
**grams** 27:23
**grand** 21:11
**grandparents** 54:20
**grateful** 47:17
**great** 20:22 31:24 47:5,16 48:9
    48:10 66:7 72:19
**greatest** 21:12
**greatly** 75:9
**grew** 52:19
**group** 30:7 32:16 35:1

800.523.7887          6-21-2019, WORD INDEX, Coles case          Associated Reporters Int'l., Inc.

Page 11

**groups** 27:5
**grow** 24:7 25:6 43:8 48:5 51:22
**growing** 26:10 54:15,15 55:14
  59:7 62:15
**guess** 37:13
**guidance** 72:17
**guide** 48:7
**guideline** 20:11 21:7 23:3 31:17
  34:6 36:1,15 37:21 38:16 40:9
  49:11 70:10,18 72:22 73:1
**guidelines** 11:23 20:10 22:12
  32:13 38:12,13 40:9,14 44:1
  49:9,17,18,25 69:11 75:14
**guilt** 14:25 44:22
**guilty** 54:13 65:4 66:13 68:21
**gun** 13:22,23 27:25 28:20 64:3
**guns** 52:16
**guy** 29:6 34:17 61:21 62:25
  64:13

---

### H

**hair** 55:15 59:17 66:2
**half** 21:22 27:22,25 39:4,6,7
  54:20 59:4
**halfway** 60:18,22 78:15
**hand** 68:4
**handed** 10:6
**Hang** 67:14
**happen** 42:3
**happened** 59:20 62:9 64:11
**happening** 17:2
**happy** 8:12 68:10
**hard** 24:25 25:17 44:4 46:8,22
  47:25 48:1,17 53:1,3 62:14
**harder** 27:1
**harm** 47:2
**harmed** 50:3
**hasn't** 46:21
**haven't** 32:9 47:2
**hay** 18:16
**he'd** 26:9 39:3 42:21
**He'll** 78:15
**he's** 7:20 8:9,11 14:11 16:17,22
  18:11 19:17,18 21:17,20 22:2
  22:5,7 25:25 28:11,14,16
  29:11 31:2,9,9 36:15 38:19,20
  39:6 41:21,21,21 42:7,7,17,19
  46:4 47:3,3 48:19,19,19,21,21
  50:4,16 52:8,9,9 58:1 61:20
  61:20,21,21 62:16 73:19 74:3

77:22 78:12,17 79:2
**head** 56:19
**Headley** 31:25 32:1,6
**healthy** 46:20
**hear** 6:4 8:1 13:9 25:13 33:15
  34:24 49:7 51:9 63:13 68:11
**heard** 33:5 35:3 37:5 45:4 53:23
  72:4
**hearing** 1:8 9:18 25:18 34:22
**hello** 43:4
**help** 26:1 58:18 61:5,10,11,25
**helped** 46:18,19 54:20
**helping** 43:6
**helps** 26:3
**heroin** 25:2 56:13
**hey** 61:19
**high** 10:7 52:4,5
**higher** 71:13
**highly** 78:21
**hire** 41:20
**history** 7:3 22:22 27:14,16
  28:21 38:21 39:2,12,12 70:19
  70:22 71:22 72:1
**hit** 19:5 52:21
**hitting** 18:14
**hold** 48:21
**holler** 63:19
**home** 24:24 27:3 47:15 57:24,24
  58:10,11,12,21 59:2,8,14,17
  60:18,21
**honestly** 57:8
**honor** 3:8,10,14,19,22 4:1,2,7
  4:13,16,19,23 5:2 9:10,16
  10:18,24 11:22,25 12:19 13:2
  13:10 15:2 16:8 19:19 20:12
  21:4,5 22:8,23 23:6,7 24:14
  26:16,16 28:9 32:9,17 33:17
  37:25 38:16,24 39:10,19 41:19
  44:9 45:17 46:1,3,6,21 47:6
  48:13,23 49:9 50:1 51:1,9,14
  53:16 54:2 64:21 67:14 68:2
  74:17 75:2 76:17,21,24,25
  77:16 79:9
**HONORABLE** 1:9
**hope** 48:10 68:3
**hoped** 49:8
**hopeful** 42:21
**hopefully** 31:5 42:22 65:25
**hospital** 46:16
**hours** 35:2,2 47:13 55:17 56:5

800.523.7887     6-21-2019, WORD INDEX, Coles case     Associated Reporters Int'l., Inc.

Page 12

**house** 24:23,23  25:3,11,14  51:24
  60:19,22
**Houston** 30:25  31:3,8,16  33:5,23
**huge** 26:16
**humanly** 46:11
**hundred** 19:13  23:3  30:22  39:3,3
  61:12  64:17,22  65:7,10,13,14
  65:17,18  70:20,21  73:1,5
  76:11,13

---
**I**
---

**I'd** 6:4  11:2,6,10  40:11  49:12
  67:15  68:11
**I'll** 10:14  12:8,8  13:11  17:5
  21:5  22:17  30:24  31:8  43:21
  50:20  71:2  77:12,24,24  78:19
  79:6,6
**I'm** 3:20  5:6  6:13  9:21  12:19
  13:5,5  14:10  17:14  18:19
  21:19  26:14  28:9,17  31:2,22
  32:8,12,17  34:3,4  35:16  36:13
  36:20  38:15,19  39:10,21  40:10
  41:7,7,9,10  45:5,7,7,10,11
  46:3,5,20,25  48:23  49:6  50:9
  50:10  51:7  52:14,23  53:2,4,10
  57:2  59:16,17  61:1,22,23,24
  62:10  64:6,7,15,16,23,23,24
  64:24  65:1,3,24,25  66:12,13
  66:13,13,18  67:10,10,11,17
  68:10  69:5  71:10,21,25  73:25
  74:4,10,24  75:8,19
**I've** 9:22  33:17  34:22  37:1  39:1
  46:10  50:17  51:1,21  66:12
  74:4  75:12  77:19
**identify** 3:5
**ill** 71:25  72:8,11
**impact** 72:6
**import** 73:15
**importance** 69:23
**important** 16:15  19:10  21:2,24
  69:10  72:11  75:9
**impose** 22:11  50:18  75:15  76:10
**imposes** 50:1
**imposition** 76:10
**impossibility** 44:5
**improving** 76:4
**inappropriate** 72:23
**incarcerated** 50:5  73:19  74:13
**incarceration** 20:24
**include** 39:19  75:25  76:7

**included** 33:19
**including** 9:20  48:10
**incongruent** 49:24
**incorporate** 6:10,10
**incorporated** 77:4
**increase** 28:1,4
**incremental** 40:13
**independently** 18:8,9,9
**indicate** 37:11
**indicated** 70:2
**indicates** 19:7  21:13  31:12  35:4
**indicating** 18:4,6,14
**indication** 33:16  35:12
**indicted** 20:20  65:19
**indictment** 20:25  65:20
**individual** 29:25  32:2  34:9  38:3
  38:5  41:24  72:2  73:18
**individually** 43:20
**indulge** 55:25
**indulged** 62:13
**inference** 14:20
**influence** 35:15  61:14  72:18,20
**influenced** 52:10,10  71:21
**information** 10:15  11:18  19:8
  70:25
**initiated** 63:22
**inmates** 59:11
**insecurity** 56:25
**insists** 49:15
**instance** 16:20
**insurmountable** 13:19
**Int'l** 1:23  80:7
**intel** 33:23
**intended** 32:15
**intending** 14:23
**intent** 14:12  27:17,22  28:6,18
  28:23  39:9  40:1  41:17  68:19
**intention** 31:11
**interchangeably** 17:13
**interesting** 31:7
**interrogatory** 14:18
**interrupt** 77:1
**interviews** 35:2
**introduced** 25:22  57:22
**introduction** 72:13
**investigation** 3:25  4:5  9:22,23
  11:3  22:16
**involved** 5:8,14  6:6  14:9  16:16
  16:17  29:15  38:3  69:25  70:4
**involvement** 11:10  22:10  69:17

800.523.7887          6-21-2019, WORD INDEX, Coles case          Associated Reporters Int'l., Inc.

Page 13

73:15
**involves** 21:25
**isn't** 37:2 57:1,4
**issue** 25:18 68:25
**it'd** 25:22
**it's** 5:15 7:23,24 11:18 12:7
    13:18,19 16:8,9,15 18:23,25
    19:10,24 21:18,20,25 25:8,18
    26:16,18,25 28:1 29:12 30:11
    30:21 31:7 34:9 35:3,9,11,24
    37:14,19 38:2 39:8 40:11 41:5
    41:5,7 42:5,13,14 44:7,9
    45:21 46:21 50:3,15 61:13
    67:9 68:9,15 69:1,10 70:2
    71:25 72:9,23 73:4,9,21 77:22
    78:11,21
**item** 4:21

---

**J**

**jail** 6:18 28:11 38:9 40:14
    41:16 42:11 52:16
**James** 24:20,22 51:14,15 53:8,15
    53:18,20
**January** 17:25 18:7,13 30:19
**jeopardy** 79:2
**job** 48:21,22 50:7
**join** 14:12,23
**joined** 65:4
**Joseph** 7:18,23,24 8:7
**judge** 1:10 45:16 48:8 51:19
    73:24
**Judith** 80:6
**July** 80:7
**jump** 39:8 40:15
**jumping** 48:23
**June** 1:6
**jury** 37:19
**justice** 21:19

---

**K**

**keep** 26:3 37:7 46:23,23 63:20
    70:18
**Kelly.Harrell@usdoj.gov** 1:16
**kept** 25:20 56:18,19,19 63:11,11
    63:12,14,15,17
**kid** 27:11 52:15 56:2
**kids** 52:21 55:20 60:9
**kill** 52:16,17
**kilogram** 36:25
**kilograms** 19:25 20:3,6 36:24

37:15,17,20 66:16 71:12
**kind** 17:8 29:9,16 38:8,9 61:16
    61:21 62:17 63:19 64:16 74:5
**kindness** 43:10
**knew** 14:6,22 25:2,2 33:5,25
    34:1 35:10 56:2,3,7,9 63:7
    64:17,18,21,21,22 65:13,14,15
**knock** 43:13
**know** 3:21 4:8 5:21 6:19 9:12
    10:12 16:23 18:11 23:11 24:4
    24:9 25:3,14 26:7,16,24 27:14
    30:10 33:3,4,4,6,6,8,14,22,24
    33:25 34:3,5,18,23 35:6 36:23
    36:23,24 37:1 38:1,8 40:9,25
    42:13,14,22 43:1,7 44:21
    46:13 47:23 48:16 49:1,4,23
    51:17,21 52:9,20 53:7,10,12
    55:12,23 56:1,6,8,11 57:18
    61:6 77:11
**knowing** 24:7 50:19 62:15,15
**knowledge** 62:15 75:17
**known** 25:16 47:2
**knows** 25:24 42:17

---

**L**

**lack** 72:16,17
**laid** 62:2,2
**late** 9:1 66:1
**law** 11:19 21:13 28:15,24,25
    33:13 44:15,15 73:13 75:10
**lawyer** 8:9 77:13,13
**lays** 31:1
**leader** 30:8,9 32:17
**leadership** 32:18
**learned** 16:13
**leave** 43:21 55:1,3 60:6
**led** 56:24
**left** 29:8 78:8
**legal** 44:3
**Lehigh** 60:19
**lend** 21:6
**length** 49:6
**leniency** 46:7 68:4
**lesser** 17:10
**letter** 47:6,15 48:22
**letters** 9:24 41:19 42:11,14
    43:17,20
**level** 11:9 19:25 22:1,21 31:13
    37:22 38:3,20 39:5 69:5,24
    71:19 72:25

800.523.7887          6-21-2019, WORD INDEX, Coles case          Associated Reporters Int'l., Inc.

Page 14

**levels** 28:1,4  38:19,19,23  40:12
**Liberty** 60:19
**license** 60:25  61:2
**lie** 46:20
**life** 23:3  25:12  38:10  39:8
  46:12,13,21  47:19  52:25  54:14
  56:11,12,23  58:4,9,23  59:12
  60:3,3  71:23,24  72:8,10,13,21
  72:23  73:20  74:1
**lift** 78:8
**lifted** 78:9
**limited** 73:14
**line** 25:6  52:19
**list** 31:23  78:12
**listened** 34:22  37:1
**lists** 50:8
**literacy** 76:4
**literally** 25:3
**little** 13:15  28:12  32:5,24
  42:18  48:24  56:6
**live** 47:13  51:24  54:7
**lived** 25:11
**local** 75:10
**long** 45:24  50:4
**longer** 47:24  60:11
**look** 17:25  21:11  29:10  31:18,25
  32:21  34:7  36:1,16  38:4  40:2
  40:23  44:22,22  60:12  71:2
  72:22  74:1
**looked** 33:21  46:15  49:18  57:19
**looking** 22:7  55:10  62:25
**looks** 32:6
**lot** 14:16,17,21  16:10,11,12
  17:9  18:6,16  35:5  38:7,12
  40:12  46:16  58:23  61:3  68:13
**love** 57:3  58:2,7  66:4,4,5,5
**loved** 48:9
**loving** 47:17
**low** 22:11  25:19  31:13  59:4
**lower** 19:25
**luck** 76:22

---

## M

**ma'am** 10:3,9  45:23  47:8  48:12
**maintain** 74:23
**maintained** 42:9
**making** 35:14,15  55:13  70:17
  74:3
**man** 41:6  46:10,12  51:23  52:2,12
  52:22,22,23  53:11  57:11  58:5

**mandatory** 20:15,19,23  50:20
  73:8  76:11
**map** 34:3
**markets** 43:7
**Massena** 1:24
**matter** 69:21  80:2
**matters** 3:3
**maximum** 75:4
**McCready** 47:10  48:11
**McGarrigle** 7:3  8:1  67:6
**MCHUGH** 1:9
**meal** 24:7
**mean** 5:10  6:4  14:19  16:19  17:16
  18:23  21:1  24:12  26:10  30:2
  30:24  33:1,9  36:25  37:6  41:25
  42:1  51:21  54:12,14,15,16,16
  55:12,14,20  56:1,4,10,17
  57:13  61:16  62:24  77:1
**meaning** 19:5,7  35:4
**meaningful** 75:13
**means** 9:13  16:2  38:8,17  54:16
  61:2  78:11
**meant** 12:1,3  26:12
**meet** 4:11  33:5  57:6  60:20
**meeting** 37:3  60:21
**meetings** 60:8
**memo** 18:17  30:13  31:25  37:25
**Memoranda** 9:23
**memorandum** 11:5  49:8
**memories** 24:12  47:19
**men** 26:25
**mentally** 4:18
**mention** 20:12  48:24
**mentioned** 16:14
**mentions** 20:6
**mercy** 51:19  52:15  53:11
**message** 17:12  22:2  74:7
**met** 61:9
**Mexican** 17:24
**Mexico** 73:16
**mic** 5:1,4
**microphone** 53:24
**middle** 25:10
**midst** 59:20
**miles** 37:17
**militate** 31:10
**mind** 18:20  46:24
**mindful** 41:9,10  45:7
**minds** 37:3

800.523.7887    6-21-2019, WORD INDEX, Coles case    Associated Reporters Int'l., Inc.

Page 15

mine 13:23
minimal 13:12 15:2,11 19:11,22
  29:19,23 32:20 38:22 69:14
minimum 11:9 50:20 73:8
minor 11:10 15:12 27:18 34:10
  69:16 71:18 77:18
minute 24:24 27:16 70:20
misdemeanor 21:10
misdemeanors 22:5,5
missing 39:20 56:21
misspoke 28:10
mistook 45:10
misunderstood 12:1 29:19
mom 54:16,23,25 55:1
moment 4:9 9:9 45:11 51:8
Monday 25:4 55:5
monetary 62:8 64:25
money 52:14 57:16 60:23 61:3
  65:11,21 76:8
month 27:20
months 22:4 23:3 27:20,23 28:2
  28:3,8,10 39:4 40:13 58:12
  70:21 73:2,6
morals 21:9
morning 3:7,10,12,13,14,18,20
  5:2 10:3,4 24:21,22 46:1,2,3
  47:10,12 51:13,14 55:6
mornings 55:22
mother 10:1 24:12 25:9,15 27:2
  42:23 43:14 45:14 52:11 54:5
  55:2,17,20,23 56:18 61:19
  66:8
mother's 56:5
motion 10:22 14:3 68:17
motions 12:24
Motors 46:17 52:11 54:24
move 24:15 42:8
moved 38:25
moving 50:15
multiple 6:23

## N

name 35:4,6 47:10 51:15 55:9
  62:25
Nathaniel 1:5,17 3:2,11,14,22
  4:7,13,16,19 29:7 30:24 43:13
  47:11,17 48:8 54:1,10 60:14
  60:17 63:9 64:4,10 65:8,12,24
  66:11,18,21 67:2,4 68:1 77:15
nature 12:14 32:3 35:19 42:19

56:1 58:20 62:16
near 78:14
necessarily 18:10 19:16
necessary 11:19 76:1,3,3
need 19:20 32:14 38:7 43:6
  45:13 51:23 53:23 59:24 61:4
  61:4,10 62:1 67:8 70:10,11
  73:17 74:9
needed 24:11 43:14 56:21
needs 15:8 26:1 42:25 78:22
negative 14:20 72:17
neglected 22:14 23:8
negotiations 65:15
neighbor's 43:2
neighborhood 25:11 64:1
neighborhoods 43:8
nephew 26:15 47:4 51:16,20 52:8
  66:8
Nevada 10:4,8,11 45:25 46:1,3
  47:9 48:13
never 9:4,5,7 25:2 27:2 28:16
  31:11 34:20,21 37:5,19 43:11
  44:8 50:3 52:12 53:3,4 56:14
  56:16 58:3 60:3,4 65:12,13,14
  65:15,15,16
new 1:24 7:5 8:11 24:9 54:24
news 61:20
nieces 47:4,5 66:8
night 49:1,2 55:19,24 56:5
nights 24:24
nine 3:3 39:4 70:25
nineteen 21:9 39:6
nineteen-year-old 19:1
ninety- 31:22
ninety-four 32:4,5,7,8,21
ninety-six 10:16 15:9,12 16:1
  29:19 64:6,11 73:6
ninety-two 70:20 73:1
nondescript 49:4
NORTH 1:18
notation 27:24
note 10:14 13:17 14:16 20:15
  28:8
noted 72:18
notes 27:15 48:23 49:21
notice 11:24 77:11
number 16:23,25 17:1 50:9 53:9
  53:10 63:5,6,10,11,12,13,15
  63:18,21,21,23
numbers 71:13

800.523.7887          6-21-2019, WORD INDEX, Coles case          Associated Reporters Int'l., Inc.

Page 16

**numerous** 59:11, 11

---
## O

**o** 11:16
**o'clock** 55:6
**objection** 10:23, 24  11:7, 14
  12:11  13:12  77:4
**objections** 4:9  11:4  12:24  13:11
  15:25
**obligated** 58:24
**obvious** 48:17  50:13
**obviously** 9:19, 22  36:10
**October** 59:2  60:18
**offender** 11:15, 23  12:4, 18  38:14
  38:20  39:5  40:7, 8, 10  49:13, 17
  49:19  70:24
**offenders** 39:11
**offense** 11:9  12:14  19:25  20:19
  21:12, 17, 23, 25  22:21  28:3
  29:10  30:1  37:21  38:2  41:4
  54:12  69:5, 14, 24  72:25  73:13
  75:9
**offenses** 10:15  27:17  39:15, 18
  39:25  40:2, 4, 5  70:23, 24  71:4
**offer** 7:22  14:24  40:11  49:12
**offered** 35:24  49:23
**offers** 29:15
**office** 75:24  76:7
**Officer** 3:16, 18  75:2
**official** 80:1
**offs** 41:24
**offset** 72:12
**oh** 16:25  17:1  26:24  32:14  35:3
  37:17
**okay** 5:5, 15  7:2, 11  8:18  10:11
  13:8  15:15, 16, 23  16:5  23:22
  24:3, 20  30:14  32:25  33:2
  38:14, 16, 18  45:22  50:14, 23
  59:23  61:1  77:9, 14, 15  78:3, 10
  78:13
**old** 21:20  25:5  26:7  27:12  29:3
  41:6  47:11  56:12
**older** 43:9  54:18  55:8, 10
**once** 55:1, 1, 18, 19  57:21, 22
  58:20, 20  59:8  61:10, 24, 25
  62:2, 9, 19  63:9, 10, 12, 16  64:11
  64:11, 12
**one's** 32:23
**ones** 69:4
**opening** 13:22

**opportunities** 6:23
**opportunity** 4:5
**opposed** 36:3  60:3
**ORANGE** 1:18
**order** 11:1  33:19  77:3
**orders** 30:11  36:13
**organizing** 34:2
**outcome** 65:3
**outside** 47:1  64:1
**outstanding** 10:22
**overall** 9:21  73:14
**owe** 52:13

---
## P

**P.P** 53:9, 10
**PA** 1:14
**paid** 33:8  55:18
**paired** 62:4, 6
**pan** 62:9
**paragraph** 11:16  50:9
**parcel** 18:11
**parent** 54:18
**parent/teacher** 60:7
**parents** 25:13
**Paris** 63:11, 22  64:14  65:13, 18
**parole** 58:13
**paroles** 28:16
**part** 6:5  8:15  10:10  18:11  26:4
  29:20, 22, 23  31:10, 19, 19, 20
  33:18  35:1, 25  40:2  43:23  49:5
  54:11  56:21  58:4  63:16, 17
  71:5  72:18  77:1
**participant** 30:1
**participants** 30:1  32:4
**participate** 64:24  76:1
**participated** 9:21  34:2
**participation** 35:19  36:4
**particular** 6:14  8:16  71:3
**particularly** 69:19
**parties** 25:21
**parts** 62:13  64:23
**party** 24:23  25:4
**partying** 27:3
**pass** 11:13
**passed** 55:23
**passing** 56:5
**passion** 57:4  66:4
**pay** 53:1
**paying** 58:19
**pays** 53:3

800.523.7887      6-21-2019, WORD INDEX, Coles case     Associated Reporters Int'l., Inc.

Page 17

**peace** 7:18
**penitentiary** 53:4
**Pennsylvania** 1:1,5
**people** 18:21 25:10,12 27:5 30:7
  35:6 42:12,14 43:6 48:10 52:9
  52:17 55:10 60:11 61:9,19
  72:3 74:1 78:12
**peoples** 51:21
**percent** 61:13 64:17,22
**Percocet** 26:2
**perform** 48:21
**performed** 35:21
**performing** 36:6
**period** 41:15
**periodically** 75:23
**permit** 13:11
**person** 17:8 29:9 42:15,16 43:3
  47:1 48:9 62:17 68:21 72:19
**personal** 60:24 61:1,2
**perspective** 14:22
**persuade** 23:4
**persuaded** 69:5,14,15 71:10,18
  71:23
**Philadelphia** 1:5,14 73:25 74:22
**Phillips** 78:7
**phone** 16:22 17:17
**phonetic** 18:2 47:10 55:9
**physically** 4:17
**pick** 29:8 31:15 39:12 47:21
**picks** 21:16
**piece** 51:1
**pieces** 20:2
**Pinkney** 30:22 31:16 33:11 34:1
  34:20 35:10 36:3 48:25
**place** 67:20 70:6 78:16,19
**placed** 74:21
**places** 47:22
**plain** 73:9
**Plaintiff** 1:3,12
**plan** 33:10 60:24 62:2
**planning** 16:17 31:20 34:2
**plans** 14:6 41:22 50:14
**plant** 54:24
**play** 26:12,23,25 40:21 57:5
**played** 27:9 32:19 34:10 36:17
  38:12 54:11,12 61:7,8
**playing** 26:15,21 55:15,15 56:16
**plea** 15:7,21 29:11 33:18 67:7,8
**plead** 9:2 20:24
**pleads** 68:21

**please** 3:5 45:23
**podium** 23:14
**podiums** 23:20
**point** 4:22 11:9 17:6 18:18,20
  20:1,5 21:18 22:3 24:15 27:23
  28:21 31:23 34:16 35:7,11
  36:18 37:16,17 52:3 62:11
  63:7 69:13 72:21
**pointed** 30:13
**pointers** 27:10
**pointing** 34:4
**points** 27:16 44:1 71:13 75:24
**poor** 26:24
**position** 7:2 11:18,20 14:1,8
  53:14 69:7,20
**positive** 72:5,12
**possess** 75:20,22
**possession** 27:21 28:5,18,23
  39:9 40:1 41:17 71:4
**possessions** 27:17
**possible** 46:11 74:22
**possibly** 48:7
**pot** 25:21 65:11
**pray** 68:3
**Pre-** 9:22 11:2 38:5
**Pre-sentence** 3:24 4:4 22:16
  27:6 32:17 49:10 50:8
**pre-trial** 6:20 44:23
**precedent** 69:11
**precise** 19:17
**precision** 18:20
**predicament** 54:8
**predicate** 12:5 20:18 28:6 40:7
  70:23
**predicates** 12:4 28:1
**preface** 15:5
**preparation** 9:18
**prepare** 4:11
**prepared** 4:4 12:19 13:9
**preponderance** 20:9
**presence** 3:16 42:12 72:11,11
**presented** 14:4
**presided** 9:19
**pretty** 25:12 27:16 29:4 30:8,8
  30:16 34:4 41:4 49:19 56:2
**previously** 74:4,10
**price** 36:9,24,25 37:2,4
**prideful** 25:17
**primary** 54:23
**prime** 73:20

800.523.7887        6-21-2019, WORD INDEX, Coles case        Associated Reporters Int'l., Inc.

Page 18

**principle** 68:20
**prior** 5:7 10:15 12:14 14:5
  16:18 28:1 39:9
**prison** 56:14 57:23 58:13,22,22
  58:24 59:1,3,8,12 65:23,25
  73:25 75:23
**prisons** 73:25 74:14
**probably** 12:5 31:11 55:3,4,18
  58:10,12,20 63:13
**probation** 3:16 4:4 11:18 22:5
  75:24 76:3,6,9 77:25
**Probation's** 11:8
**problem** 9:17 25:25 67:3
**proceed** 4:18 11:1 12:22 24:2
  45:23 47:5
**proceeding** 80:2
**process** 8:15 9:2
**produced** 2:1
**program** 42:24 76:2,3 77:21,22
**promote** 73:13
**promotes** 48:16
**proof** 37:22,23
**proper** 22:14
**prosper** 52:7
**protect** 48:5
**protective** 48:3,4
**protector** 46:14
**proud** 47:25
**prove** 20:9
**provide** 76:6
**provided** 1:22 25:1
**Provision** 12:4 38:20 40:8 49:17
**pull** 27:15 49:20 53:24
**pulling** 55:24
**punishment** 40:13 50:2 73:17,18
**purchase** 33:2,10
**purpose** 63:15 76:9
**purposes** 9:17 31:17
**pursue** 67:8
**pursuing** 67:7
**put** 8:14 20:13 23:10 51:25
  52:18,20 54:8 68:7
**PWID** 28:22,22

**Q**

**qualify** 15:1 70:16,23
**qualifying** 20:18 28:6
**quality** 72:2
**quantity** 27:24 36:9,25 37:14,24
  38:4 49:13,14 71:9

**quarter** 37:9
**question** 7:3,21 71:6
**questions** 50:13
**quick** 16:23 20:12
**quickly** 31:5
**quite** 27:20
**quote** 14:3

**R**

**R.V** 31:15 33:8,8
**raise** 52:21,22 54:20
**raised** 26:12 52:4,13 54:18
**raising** 55:20
**range** 21:7 23:3 49:11,17 70:18
  71:12 72:22,23 73:1
**rare** 13:18,18
**reach** 30:23 34:15 78:18
**reached** 31:8
**reaches** 33:24
**reaching** 18:8
**read** 9:25 33:20 42:13 43:19,22
  47:6 60:11 65:20
**reads** 13:18
**ready** 23:13
**real** 16:23 20:12
**realities** 73:25
**really** 13:12 14:9 15:10 16:1,12
  16:15 19:24 20:16,21 22:14
  24:11 25:8,20 26:11 27:11
  29:9,16 31:18 33:9 34:10
  35:25 36:21 42:15,15 46:22
  49:24 56:14 63:19 68:15
**reason** 7:21 24:11 26:8,9 27:2
  63:4 73:21
**reasonable** 38:4
**reasonably** 37:23 49:14
**reasons** 28:7 50:17
**recall** 33:18
**receive** 20:22
**received** 3:24 4:15 8:8 35:22
  62:21
**receives** 20:16
**reckless** 54:7,7
**recognize** 3:15 44:16
**recognized** 51:4
**recollection** 14:1,7,17 68:16
**recommend** 77:20
**recommendation** 74:14,21 78:4
**recommended** 73:7
**record** 3:1,6,24 8:15 9:18 10:10

800.523.7887          6-21-2019, WORD INDEX, Coles case          Associated Reporters Int'l., Inc.

Page 19

20:14 21:2 23:11 36:7 37:10
40:3,3 45:1,9 68:8 69:2,6,19
70:17 71:3,10,14 72:14 73:23
**Recorder** 1:22
**recording** 80:2
**reduce** 49:9
**reduced** 72:25
**reduction** 7:21 8:16 13:4 29:23
29:25 30:5 31:17 32:3 34:7
36:16 38:24 75:13
**reductions** 39:6
**reference** 20:1
**referred** 17:20 18:21,22 20:3
35:9
**refers** 18:17,19 27:6 35:11
**refusal** 11:8
**regard** 70:2 71:4
**Regrettably** 23:19
**rehabilitate** 74:4
**rehabilitation** 42:24 50:15
**reject** 73:2
**rejected** 69:9
**relationship** 16:18 32:3 41:9
42:9 56:15 58:14,15
**release** 28:23 41:23 74:24 75:1
75:5,8,16,19,23 76:5,15
**released** 28:17,18 41:18 65:23
65:24,25
**rely** 79:6
**remain** 62:18 78:19,22
**remember** 16:24 34:22 50:8
**remorse** 41:23
**repeatedly** 18:18
**replaced** 8:10
**report** 3:25 4:5 9:23 11:3,4,16
22:16 27:6 38:6 49:10 50:8
**Reporters** 1:23 80:7
**Reports** 32:18
**represent** 77:13
**representation** 4:15
**representing** 41:22
**represents** 8:8
**request** 26:4 69:7,8
**requesting** 7:5
**required** 11:16 71:1 74:25
**requirement** 76:10
**residential** 77:20
**respect** 5:5 7:17 11:7 15:11,25
22:17 28:15,25 42:17 58:7
64:8 69:3,13,18 71:9,20 72:8

73:6,13,15,17,21 74:9,23,24
75:7 77:19
**respectfully** 43:5
**responsibility** 5:6 6:23 13:4
35:21 36:5 38:24 43:25 51:25
68:20 69:4
**responsible** 25:9
**resulted** 40:21
**retired** 46:17
**return** 55:3,5
**returned** 57:23,23,24 59:2
**returns** 76:7
**review** 4:6
**reviewed** 9:22 10:9 33:20 43:16
**rewords** 32:5
**rid** 62:8
**ride** 43:14
**right** 3:1,23 4:3,8,14,20,25
5:18 6:22 7:22 8:3,13 9:8
10:10,19,25 11:11 12:21 13:6
13:8,14 15:15,22 17:15,18
22:13 23:2,2,8 30:21 32:23
44:11,25 45:21 46:20,24 51:3
51:22 53:22 57:14 58:14,16
64:6,7,9,16 66:17,25 68:6,23
68:24 74:16 75:10 76:19,22
77:9,16 78:24 79:3,6
**rights** 77:8
**rise** 53:23
**risk** 6:6
**River** 1:24
**road** 52:25
**Rob** 62:22,23
**robbed** 53:4
**ROBERT** 1:13 3:7
**role** 13:12 15:2,12 19:11,22
29:19,23 30:15 32:18,20 34:10
36:11,17 38:22 54:12 69:13,14
69:16 71:18
**rolled** 56:6
**roof** 56:18
**room** 24:14 35:23 45:14 56:5
**Rose** 64:1
**route** 31:15 33:6,12 34:3 59:13
59:21
**rule** 14:2 30:10 68:17
**rules** 21:14 28:14 42:2
**run** 49:25 75:7
**RV** 33:7

800.523.7887          6-21-2019, WORD INDEX, Coles case          Associated Reporters Int'l., Inc.

Page 20

## S

**sacrosanct** 68:20
**safety** 51:16,17,18 64:2
**salon** 41:19,20
**sat** 44:9
**satisfactory** 12:18
**satisfied** 4:14
**saw** 43:4
**saying** 15:5 18:3 22:20 34:3
  35:16 36:14 37:18 39:21 47:16
  52:21,23 53:5 61:6,7 63:14,20
  64:16 66:13
**says** 13:22 16:25 17:1 20:1,6
  27:7 31:3 32:21 34:7,24 36:15
  37:16,17 40:9 47:9 49:3 72:7
  77:20
**scenario** 17:9
**scheme** 21:11 33:10 34:6
**school** 10:7 25:10,19,23 26:8
  48:17,18 52:4,5 55:1 58:19
  60:9,10 66:2
**scope** 32:22,24 36:19 71:15
**scrolling** 17:7
**seated** 53:24
**second** 11:14 17:5 19:19 21:25
  28:5,18 30:15 34:11 40:18
  41:16 54:25 67:14
**secondhand** 30:9
**Section** 51:24
**security** 6:6
**see** 19:16 26:12,23,25 31:2
  33:22 34:8 35:7,18 36:6,7
  42:23 44:23 47:14 48:15 52:7
  52:10,23 53:4 56:3 57:4 65:23
  66:1,1,6 76:9
**seeing** 61:22,23,23,24
**seen** 31:13 32:17 33:17 52:5
**self-esteem** 25:19
**sell** 37:7 59:24
**selling** 27:12,23 29:15 31:11
  43:1 57:22,25,25 59:9,24
  60:14 63:24
**send** 36:18
**sending** 63:15,18 65:16,18
**sense** 14:10,10 15:3 18:25 21:20
  32:16 73:9
**sensitivity** 5:24
**sent** 30:20 63:21 65:14,21
**sentence** 9:23 11:3 20:18 21:7

21:17,22 22:9 27:20 28:19
  29:2 38:6 40:17,22 41:5 46:25
  49:16,23 50:1,18 58:11 59:4,8
  68:4 73:2,3,4,7,10,11,21 74:7
  74:25 75:4,13 77:1,5,10
**sentenced** 34:8 40:16 47:14
**sentences** 22:1 59:12 74:5
**sentencing** 4:12,18 9:23 11:5
  13:13 18:17 26:4 31:25 32:13
  32:13 37:25 49:8 70:9 72:4
  75:18
**separate** 9:2 16:22
**separated** 78:12,22
**separations** 78:8,19
**September** 65:19
**serious** 41:4,7,7,8
**seriously** 71:6
**seriousness** 73:13
**serve** 73:5
**served** 76:9
**serves** 41:24
**service** 1:23 2:1
**serving** 46:25
**set** 11:5,15 20:19 73:11
**setback** 20:13
**setting** 22:15
**seven** 9:24 11:16 25:4 28:2,3
  31:22 32:4,5,7,8,21 39:4
  54:19
**Shauntay** 55:9,11
**she's** 54:16,19
**shift** 54:25
**shopping** 47:20
**shots** 31:21
**shouldn't** 42:1
**show** 46:6
**showed** 57:10,11 58:3,6
**showing** 10:6 58:2
**shown** 19:7 28:15 41:23 48:21
**shows** 16:16 35:17
**side** 4:21 5:24 45:1
**sidebar** 5:1 9:14,15
**sign** 11:1
**signed** 77:4
**significance** 39:25 73:22
**significant** 22:7,8 35:9 70:8
**silly** 26:24
**similar** 14:2 24:4 71:14
**Sincerely** 48:11
**single** 54:18

800.523.7887          6-21-2019, WORD INDEX, Coles case     Associated Reporters Int'l., Inc.

Page 21

singularly 25:1
sir 3:17,21 24:21 51:13 53:14
  53:23,25 67:1 76:23
sister 47:4 54:18,19,19,21,22
  54:22 55:1,7,14
sister's 55:9 56:19
sisters 47:22 66:8
sit 60:10,21
situation 8:10
situations 13:18
six 3:3,4 10:17 22:22 29:11
  39:5,7 49:10 73:8
six- 27:19
sixteen 15:6 64:5,5 67:12 74:24
sixty 22:4 23:3 37:17
sixty-five 70:21
skills 42:21 74:11 76:4
sleepovers 47:21
small 21:20
smart 47:25 48:6,14 56:2
smile 43:4
smoking 25:21
snobbish 66:22
snowboarding 26:13
snowed 43:3
society 21:15
soda 27:8
soldiers 30:10
somebody 25:21 30:8 32:19 35:1
  43:11 55:13 64:20,20
somewhat 70:21
son 10:6 24:13 46:4,5,6,21
son's 46:4
soon 54:22,22
sorry 14:10 17:14 28:9,17 38:19
  50:9 51:7 66:12,18
sort 14:2 25:7 26:3 30:9 31:10
  32:6 34:12 35:11 39:11
sought 29:7
sound 42:15,16 48:14 80:2
sounds 26:24 42:1
source 17:24
speak 30:11 37:10 42:12 45:15
  45:16,20,24 46:4 66:19
speaks 42:9
special 76:11,13
specialized 59:16
specific 34:25,25 40:22 68:12
  70:4,5 71:11 73:22
specifically 33:12 36:18

specifics 17:5 36:10 72:15
spelling 18:2 47:10 55:9
spent 28:9 40:14
split 37:5,8,9
spoke 49:6
sport 26:12
Spriggs 80:6
ST 1:18
Stadium 26:22
stage 6:24 22:15 72:10
stages 16:17 18:1
stake 65:2
standard 13:17
standpoint 70:9 76:14,20
stars 26:18
start 13:17 23:22 37:18 38:15
  47:16
started 25:23 27:4 49:2 57:22
  57:25
starting 24:3
starts 52:9
state 20:18 22:3,4 26:18 29:2
  59:12 75:10
statements 28:13 44:10 48:25
  67:16
States 1:3,10,13,13 3:2 32:1
statistic 53:2
status 78:21
statute 44:4
stay 46:20,22 47:15 53:24 61:20
  61:20
steer 60:6
step 38:15 40:18,19
stood 36:20
stores 43:7
street 1:14 53:8
stretch 36:11
strictly 59:14
strive 51:18
strong 71:8
structure 32:22
struggles 46:13
stupidity 51:20,20
subject 22:18,20,24,25
submit 14:13 20:3,8 36:17 49:3
  75:22
submitted 9:25
substance 75:22
success 48:19
sufficient 20:4,8 50:2 70:15

800.523.7887          6-21-2019, WORD INDEX, Coles case          Associated Reporters Int'l., Inc.

Page  22

73:12,21  74:7
**sufficiently** 71:25
**suggest** 14:20  65:10  69:25
**suggestion** 73:2
**suggests** 8:11  14:4
**SUITE** 1:14
**supervised** 74:24  75:1,5,8,16,19
  76:5,15
**support** 52:1,1  56:17  59:25
**supported** 58:25  59:1
**supposed** 53:10  78:9
**SUPPRESION** 1:8
**sure** 3:20  4:24  5:3  6:16  8:19
  15:20  23:9  32:17  39:10  45:18
  59:25  67:17  74:5  75:8,19
**surface** 24:10
**surprised** 33:15
**susceptibility** 41:11
**suspended** 28:21
**swore** 60:4
**system** 21:19  68:21

---

**T**

**table** 56:19
**take** 15:3  23:19  31:15  33:12
  40:24  45:3  48:8  50:15  54:4
  55:8,12  57:2  59:13  66:6  68:25
  72:20,20  76:8
**taken** 47:23
**takes** 71:5
**talents** 74:12
**talk** 25:12  27:9  36:9,9,9  37:13
  39:23  49:2  63:3,4  78:19
**talked** 6:18  19:2  35:23
**talking** 16:12,13  17:20,21  23:11
  29:11,13  30:23  35:10  64:6,7
  65:6,9  67:12
**Tastykake** 41:18  59:21
**taught** 29:5  72:12  73:24
**tax** 76:7
**teach** 51:22
**teased** 25:15
**tell** 3:23  57:14,19  61:8,15,17
  61:19  62:14,17  64:14
**telling** 19:9  64:20
**tells** 19:5,5  29:1
**tempted** 74:8
**ten** 15:7  20:15,23  27:16  39:3
  49:25  50:1,19  73:7,8  74:25
  75:5

**ten-year** 15:21  50:20
**term** 18:23  34:13,19,25
**terms** 5:24  77:5
**test** 33:25  75:23,25
**testament** 74:3
**testified** 20:2  48:25
**tests** 12:8
**Texas** 49:2
**text** 17:12  18:3  30:17,20  31:4
  35:22  36:18
**texted** 34:11  62:24  63:5,10
**texting** 63:11
**texts** 18:10  30:23,24
**thank** 3:17,19  5:18  6:12  9:16
  10:8,11,21  12:21  13:7  16:6
  19:21  22:12,13  23:17  38:18
  43:18  45:14,17  48:12,13  50:11
  51:2,12  53:17,18,19,20,21
  67:19  69:2  76:18  77:3,6,16
  78:1  79:9,10,11
**Thanks** 44:17
**that's** 6:8  7:21  8:4  11:19  12:1
  12:21,22  14:12,24  15:17  16:13
  16:14  17:11  20:3,8  21:2,12
  26:14  27:25  28:24,25  29:21,21
  30:3  33:2,2,25  35:9,16  36:8
  36:12,13  37:14,20  38:16  39:4
  40:6  41:25,25  42:3  43:7  47:8
  48:17  51:16,17  52:24  53:15
  55:21  57:6,25  59:22  61:24
  63:22  65:20  66:4,4,6,16  67:3
  67:3  68:1,18  73:10,24  74:20
  74:22  75:2,3  76:1
**there's** 4:3,8  6:5  11:4  13:21
  17:2,4,6  23:12  24:24  30:7,9
  30:16,20  31:11  32:16,18,19
  37:10,22  38:5  40:12  42:3,5
  67:7,8,9,9  68:12  70:15,25
  76:12
**they're** 11:22  26:10  37:1  43:23
**thing** 25:16  46:9  58:2  62:10,10
  66:14,14,16  67:11  77:18
**things** 8:14  17:16  18:16  20:13
  21:5,11  23:17  25:23  29:6
  31:17  40:3  41:13  42:3  48:19
  56:1,7  57:13,15  58:18,19,19
  78:7
**think** 6:5,5,24  7:11,11,14,14,20
  8:16  12:14,21  13:16  15:3,10
  17:19  18:16  19:10,14,21  21:6

800.523.7887    6-21-2019, WORD INDEX, Coles case    Associated Reporters Int'l., Inc.

Page 23

23:22 25:18 27:1,20 28:11,14
28:15 29:12,18 30:6,15 31:10
31:12 32:4 33:24 35:2,8,17
37:8,15,21 39:19 40:16 41:23
42:25 44:1,6,9,20,25 45:8,10
45:15 46:9 59:2 60:19 68:9
69:1,10 70:15,22 71:7,16
72:14,19,23 73:12 74:6,25
76:15 78:7
**thinking** 64:18
**third** 30:16 69:11 70:7
**thirteen** 47:11
**thirties** 72:22
**thirty** 20:6 22:4 39:7 40:15
41:6,8 55:4,6 72:23
**thirty-** 39:3
**thirty-five** 49:12 72:25
**thirty-one** 22:6 49:10
**thirty-seven** 22:21 39:7
**thirty-some** 41:6
**thirty-two** 22:6 38:15,19,20
**thorough** 50:7 56:17
**thought** 8:15 12:9 16:1 43:11
**three** 3:3 11:9 23:3 27:16 30:21
31:23 36:2 39:13 58:12 65:7
65:10,13,14,17,18 66:24 69:12
70:20 75:6
**Thursday** 55:19
**time** 4:11 15:7 16:20 19:20 22:3
22:4,7,12 23:19 24:14 25:18
25:24 26:6 27:11,25 28:9,11
29:4 30:23 34:11,20 35:5,18
37:13 40:12,14 41:15,24 42:7
43:4 45:13,17 46:25 50:15
54:4 55:11 56:10,15,17,23
57:2,6,21 58:1,1,11,16,17
63:25 64:17,19 67:5,20 75:18
78:8
**times** 26:1 32:12 41:21 42:19
44:4 49:3 57:19
**timing** 20:17
**today** 3:21 4:12,18 9:18 10:1
20:20 45:15 46:10 50:18 51:19
53:11 54:3,9 62:10 68:3,15
75:12 77:4
**togethers** 60:9
**told** 8:1 18:2 25:22 31:1,2,9
36:7,11,18 48:15 53:9 62:22
62:25 63:3,5,6 64:12,12,14
65:16 67:7,10,10 77:19

**tomorrow** 30:25 31:9
**tonight** 26:14,21
**total** 73:5 76:12
**totality** 71:3
**touch** 8:25 34:14
**tough** 32:24
**town** 26:20
**trade** 50:16 59:15
**trafficking** 24:6
**trainer** 61:3
**trainer's** 60:25 61:2
**training** 42:20,23 74:10,13
**transaction** 14:7
**transcript** 1:8 2:1 10:6 63:14
**transcription** 1:23 2:1 80:1
**transcripts** 33:20
**treated** 43:3
**treatment** 26:5 74:15 77:19,21
77:22
**trial** 5:8 9:20 13:20,25 14:2,8
14:21 33:20 44:2 48:25 54:14
63:14 66:22 67:1,5 68:24 69:7
**trials** 9:20
**tried** 30:12 46:11 51:22
**trigger** 12:4,6
**triggered** 39:8
**trouble** 74:1,2
**true** 16:9
**trust** 75:12
**try** 33:22 34:16 46:23 47:25
58:4,8,15
**trying** 30:23 33:1 36:20 38:12
42:7 46:7 66:22 74:25
**turn** 11:2
**turned** 63:10
**twelve** 52:2 55:17
**twenty** 20:2,7,9,21,23 21:10
29:3 37:14,16
**twenty-** 74:6
**twenty-four** 21:23 25:4 28:10
40:13
**twenty-four/seven** 55:7
**Twenty-nine** 14:3 68:17
**twenty-one** 21:16,20 27:21 29:3
**twenty-six** 21:24 38:22 39:2
78:12
**twenty-three** 21:22 27:22
**twenty-three-** 27:19
**twenty-year** 73:10
**two** 3:4 11:3,9,22 12:7 22:5

800.523.7887    6-21-2019, WORD INDEX, Coles case    Associated Reporters Int'l., Inc.

Page 24

27:17,20,25 28:21 31:23,23
35:22 39:9,9,11,14,18,25 40:1
40:4 42:14 44:1 46:5 47:13
49:11,20 55:4,6,20 56:12 59:3
69:13 70:20 73:1,5
**two-level** 14:14 15:1 69:15
70:13
**two-point** 13:3
**two-prior** 71:4
**type** 12:5 56:24
**types** 38:7

---

### U

**Uh-huh** 11:12 41:12 67:23
**uncle** 24:15,19 51:4,10,22 59:17
**uncles** 26:19 52:19
**undecided** 45:16
**underscore** 73:12
**understand** 4:20 7:2 10:1 12:7
15:11 20:25 25:8 29:8 32:25
38:6 53:14 66:23 69:3,20
75:12,20
**understanding** 5:14 6:17 7:24
11:19 29:2,24 75:3
**understood** 15:17 32:22 33:1
57:9 61:6,7
**unintelligible** 5:1,7,7,9,11,12
5:13,14,16,17,19,20,21,22,22
6:7,9,13,17,18,20,22,24,25
7:1,4,12,13,17,18,19,19,23,25
8:1,6,9,11,21,22,23,24,25 9:1
9:4,6,7,8 14:18,19 16:18 17:9
31:12 46:8 48:9 52:5 54:21
56:8,16
**union** 51:15 53:6
**unique** 40:21
**United** 1:3,10,13,13 3:2 32:1
**University** 26:21
**unravels** 69:22
**unresolved** 12:24
**Upland** 64:1
**use** 34:9 50:17 72:13 75:21
**uses** 18:23 34:19
**utilized** 70:11

---

### V

**v** 1:4
**vaguely** 14:6 68:17
**value** 64:25
**variance** 12:8 39:1 40:12 49:12

69:8 70:16 71:8 72:16
**various** 38:25 42:24 43:7
**vehicles** 57:16
**veneration** 72:4
**venture** 67:6
**versus** 3:2 36:2
**view** 72:3
**violated** 28:16 58:13
**violation** 75:11,16
**violations** 28:20,22,22,23
**virtue** 40:19
**vocational** 74:9,13
**vocations** 42:24
**voiced** 41:21
**vs** 32:1
**vulnerable** 71:23

---

### W

**wait** 17:1
**waiver** 33:19
**walked** 53:8
**want** 5:21 6:14 8:14,20,23 20:12
23:22 25:13,20 26:11 28:7
36:13 45:15 46:22,23 47:13
57:1,15 59:9 60:1 61:4,6,13
61:21 62:13,17,18 63:2,16
64:12 66:3,9 77:10
**wanted** 8:1 10:12 27:11 29:7
45:16 47:22 55:21 59:10,13,14
60:1,2,11,25 63:25 64:2
**wants** 29:6 42:20 45:19 48:20
67:15
**warranted** 22:9
**wasn't** 13:23 14:9 24:11 31:20
31:20 33:21 34:5 35:24 38:14
49:18 52:6 54:14 56:11 59:13
59:23 68:15
**watch** 26:20 48:5
**watched** 51:22
**water** 24:8
**way** 12:1,22 16:9 17:22 18:17
19:2 23:4 35:11 41:23 45:23
46:19 53:1 55:2,12 61:12,17
62:9 64:16,18 67:8,8 70:16
72:13 79:7
**ways** 37:8 38:13 48:19 72:20
**we'll** 11:6,6,13 13:15 67:11
70:13 78:5
**we're** 3:21 15:5,18,24 23:11
54:19 79:12

800.523.7887 6-21-2019, WORD INDEX, Coles case Associated Reporters Int'l., Inc.

Page 25

we've 10:19 44:25 68:13
weapon 21:23
wear 35:8
weave 12:13 23:23
weaving 13:5
weekends 25:14 27:3
weight 39:24,24 70:6
went 6:25 24:15 26:2 27:13 29:2
  33:23 42:11 56:10 57:21,23
  58:13,16,17,22 59:3,3 60:20
  61:8
what's 11:20 25:14 36:8 68:16
whatsoever 69:2
Where's 65:22
Whispering 5:1
white 56:7
wholeheartedly 64:18 65:4
why'd 60:13
willing 21:14
WILMINGTON 1:18
winds 59:21
wing 19:2 27:10
wire 16:10 17:6,21,21 18:21
  19:3,12 20:1 37:1 42:16 65:6
  65:9
wiretap 69:22
wish 4:21 48:4
withdraw 12:9 20:14
withdrawal 10:15
withdrawn 12:11
Womack 14:10 16:12,19 17:21
  18:2,7 19:5,7,18 27:3,8,12
  29:1,2,8,14 34:15,21 40:15
  41:3,10,15,17 43:1 57:7,7
  58:7,17 60:18 62:20,24 63:18
  64:2,12 69:19 71:11,20,24,25
  72:6,10,18 74:8
Womack's 63:12,13
woman 48:6 52:21
women 27:1 51:23
won't 15:8 66:1 78:14
wood 74:11
word 34:9
wording 18:11 19:17
work 24:24 25:4 35:8 46:8 51:16
  53:1,3 54:24 55:2,3,4,5,18,18
  55:19 59:10,15,19 79:7
worked 24:25 41:18,18,20 52:11
  54:25
worker 51:15,18 53:7

working 30:7 32:12 48:17 55:17
  59:22 66:1 74:11
world 54:16
world's 21:12
worried 59:23
worry 67:12
worst 54:17
worthy 72:3
wouldn't 52:18 55:2,5 59:5 60:6
  60:6
wrap 49:7
write 41:24 47:15
writeups 42:6
wrong 52:15,17 54:11 57:14 60:6
  64:17,18
wrote 47:6

---
### X
---
### Y
---
yeah 5:3,15,15 7:8 12:10 15:22
  16:4 39:22 44:13 60:16 67:17
  79:1,4
year 40:17 41:6,8 58:11 59:4
  74:7 75:5
years 15:7 20:15,23,23 21:20
  25:5 26:7 27:12 28:12,21 29:3
  32:1 38:9 39:4,7,7 40:16,20
  41:3,5,6 42:7 47:11 49:16,22
  49:24 50:2,19 51:15 54:20
  56:12 58:20,21 72:23 73:3,7,8
  73:20 74:25 75:5,6,6
yield 23:2
York 1:24
you'd 23:16
you'll 27:15
you're 6:1 23:13,14 25:7 30:2
  31:7 34:8 35:5,7 40:16 64:19
  65:23 73:24 75:8 76:7
you've 10:5 43:21
young 18:23 25:7 26:25 27:1
  34:19 35:5,7,16 37:8 43:1
  48:6 49:4 55:20 59:7 71:23
younger 18:24
youth 73:19
youthful 72:17

---
### Z
---
### 0
---

800.523.7887          6-21-2019, WORD INDEX, Coles case          Associated Reporters Int'l., Inc.

Page 26

| 1 |
|---|
| **1** 18:15 |
| **10** 1:24  59:2  60:18 |
| **10:20** 1:6 |
| **1007** 1:18 |
| **1250** 1:14 |
| **13662** 1:24 |
| **19106** 1:14 |
| **19801** 1:18 |
| **1993** 32:13 |
| **1998** 57:24,24 |
| **1st** 19:4 |

| 2 |
|---|
| **2:14-cr-00496-GAM-3** 1:3 |
| **2004** 27:21 |
| **2006** 28:17 |
| **2009** 28:18 |
| **2012** 28:20 |
| **2013** 59:2  60:18 |
| **2014** 18:15  65:19 |
| **2019** 1:6  80:7 |
| **21** 1:6 |
| **215-861-8469** 1:15 |
| **22** 80:7 |
| **26** 65:19 |
| **27th** 17:25  18:8  19:15 |
| **29th** 18:13  30:19 |

| 3 |
|---|
| **302-256-0804** 1:19 |
| **3rd** 19:6 |

| 4 |
|---|
| **4th** 1:18  30:20 |

| 5 |
|---|

| 6 |
|---|
| **615** 1:14 |

| 7 |
|---|

| 8 |
|---|

| 9 |
|---|
| **98** 58:11,21 |